**Randall Anthony GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 945–90.**

Court of Criminal Appeals of Texas, En Banc.

March 25, 1992.

Rehearing Denied May 20, 1992.

Allen C. Isbell (on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and J. Harvey Hudson, Asst. Dist. Atty., Hous-

---

ton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BENAVIDES, Judge.

Appellant seeks to set aside his Murder conviction because evidence illegally seized from his person was erroneously admitted against him at trial in violation of article 38.23 of the Code of Criminal Procedure. He claims the El Paso Court of Appeals erred to hold that the federal inevitable discovery doctrine is an exception to the Texas exclusionary rule. *See* TEX.CRIM. PROC. art. 38.23 (Vernon 1990). The instant cause is one of first impression in this Court.

Appellant and his wife were separated in 1987. Pending conclusion of their divorce action, his wife was awarded temporary custody of their young son. But, during a period of visitation, Appellant took the boy to Florida in defiance of court order. His wife complained to the authorities, and Appellant was soon arrested in Miami and extradited to Houston. After that he lost the right to visit with his son altogether and, on October 8, 1987, was formally arraigned for the felony offense of Interference with Child Custody. The next morning his wife was found dead. The obvious victim of a homicide, she had been beaten, strangled and stabbed.

Soon afterwards, Webster Police Chief Reyes Sonora arrested Appellant at his attorney's office. The police sought him out there in part because they had difficulty locating his young child for a time after discovering his wife's body. But Sonora also knew of the pending criminal charges against Appellant and was told of Appel-

lant's violent nature by the victim's sister. Evidently, he also believed that Appellant had missed a mandatory court appearance and that a warrant had issued for his arrest in connection with the child custody charges. This information turned out to be false. Appellant was arrested even though no warrant was actually issued for him in connection with the murder of his wife until about nine hours after Sonora arrested him in fact.

Meanwhile two photographs were taken of him by the police, each portraying a bruise on his abdomen. At trial, the State contended that the victim inflicted this injury during a struggle with Appellant, and medical testimony tended to support such conclusion. Appellant challenged admissibility of these pictures, together with the accompanying medical testimony, upon the ground that they were fruits of an illegal arrest. His objections were overruled, and in short order the jury convicted him of Murder. His punishment was assessed by the trial judge at confinement in the penitentiary for forty years.

On appeal appellant renewed his complaint that the pictures were the fruits of an illegal arrest made without "warrant and without probable cause." Appellant conceded that a proper basis for the seizure would have existed when a warrant was later issued for his arrest, but that it did not exist when the photographs were taken. The Court of Appeals did not decide the question of probable cause at the time of arrest. Rather, it determined that the evidence would inevitably have been discovered anyway, and affirmed the conviction. *Garcia v. State*, No. 08–89–00242–CR (Tex. App.—El Paso, delivered July 25, 1990) (unpublished opinion). We granted review to decide whether the doctrine of inevitable discovery is an exception to the Texas statutory exclusionary rule.[1]

---

1. We have not addressed this issue before. Our closest approach was in a footnote to *Garza v. State*, 771 S.W.2d 549, 550 n. 1 (Tex.Crim.App. 1989) (plurality opinion), a case in which the lower court refused to apply the "attenuation doctrine" to article 38.23. However, the question regarding an exception to the exclusionary rule was not at issue, and we refused to consid-

er the ground of error because the facts were not sufficiently developed at trial. Nevertheless, in our footnote, a plurality of the Court declined to adopt that portion of the lower court's opinion which held that the attenuation doctrine is inapplicable to the Texas statutory exclusionary rule. In the same footnote, several prior cases were cited in which the "inevitable

For most of this century it has been a bulwark of federal constitutional law, authoritatively imposed by decisional law of the United States Supreme Court, that evidence obtained by the government in violation of rights secured by the Fourth Amendment to the United States Constitution may be excluded on demand of the aggrieved party if offered against him in a criminal proceeding. *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Over the years, however, the Supreme Court has constrained this exclusionary principle with a number of exceptions, including the rule that evidence which would inevitably have been discovered by the government absent constitutional violation may be received at trial in spite of such violation. *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984) (inevitable discovery doctrine). *See also Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963) (independent source doctrine); *United States v. Leon*, 468 U.S. 897, 905, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677 (1984) (good faith doctrine).

■ This inevitable discovery doctrine is a species of harmless error rule which holds that constitutional violations in the seizure of evidence are inconsequential for purposes of admissibility, not when the outcome of trial was probably unaffected by the illegality, but rather when the outcome of police investigation was probably unaffected by it. *Nix*, 467 U.S. at 443 n. 4, 104 S.Ct. at 2509 n. 4. The rule has been applied in Texas only to federal suppression questions under the exclusionary rule articulated by the United States Supreme Court. Thus, to the extent that Texas law provides an independent basis for the exclusion of evidence, the inevitable discovery exception approved by the United States Supreme Court is simply irrelevant.

This is not to say that the federal exclusionary rule is inapplicable in Texas. Clearly, it does apply here just as it does throughout the United States. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). But it need only be implemented by the States insofar as they do not prescribe stricter exclusionary rules themselves.

■ The people of Texas, acting through their elected representatives, have decided that

[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Art. 38.23, V.A.C.C.P. This statute, on its face, absolutely requires the exclusion of all evidence seized in violation of the Fourth Amendment, and because the federal inevitable discovery doctrine is not an exception to core prohibitions of the Fourth Amendment, but only an exception to the federal exclusionary rule, the mandate of article 38.23 to exclude any evidence obtained in violation of the United States Constitution does not, even by necessary implication, require a decision about whether questioned evidence would inevitably have been discovered anyway. The Court of Appeals therefore erred to hold otherwise.

■ Our principal task in construing the statute is to discover its place in the Texas scheme of criminal jurisprudence. Because article 38.23 is an enactment of our legislature, it represents the democratic will of Texans, not merely an evidentiary adjustment made by the courts to remedy violations of the law. As always, in the case of legislation, courts may interpret, but they may not amend. For this reason, while we are at liberty to impose exceptions upon

discovery doctrine" was applied. We note, however, that these prior cases do not discuss article 38.23 at all. *See Bell v. State*, 724 S.W.2d 780, 793 (Tex.Crim.App.1986), *cert. denied* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Dickey v. State*, 716 S.W.2d 499, 505 (Tex.Crim.App. 1986); *Wicker v. State*, 667 S.W.2d 137, 141

(Tex.Crim.App.1984); *Vanderbilt v. State*, 629 S.W.2d 709, 723 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). Some fail even to notice the existence of a statutory exclusionary rule, while others rely solely on federal constitutional law.

court-made exclusionary rules, we may not create exceptions to statutory exclusionary rules. Unless a statute itself can fairly be read to include exceptions, no exceptions may be imported by judicial fiat.

Article 38.23 does expressly contain an exception for the good faith reliance of law enforcement officers upon warrants issued by neutral magistrates.[2] On its face, however, it contains no others. The State suggests that other exceptions, especially those imposed by the United States Supreme Court on the federal exclusionary rule, should nevertheless be "found" implicit in the statute. Without question, it is often the case that statutes imply more than they say, especially if read together with other laws on the same subject or in such a way as harmonize the law with constitutional requirements. But courts must take the greatest care not to invent a statute of which the legislature gave the public no notice.

Thus, in a similar context, this Court declined to adopt a judicially created exception announced by the Supreme Court where a parallel state statute existed. Specifically, we held that the federal rule allowing impeachment of criminal defendants with confessions obtained in violation of the Fifth Amendment's warning rule, *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), was inapplicable to oral statements taken in violation of Article 38.22 of the Texas Code of Criminal Procedure, because our statute did not contemplate an exception for purposes of impeachment. *Butler v. State*, 493 S.W.2d 190 (Tex.Crim.App.1973). Even when the statute was eventually amended by the legislature to permit impeachment under circumstances similar to those contemplated by the constitutional rule, this Court declined to apply it in the same way because it was drawn more narrowly than the federal rule. *Alfaro v. State*, 638 S.W.2d 891, 897 (Tex. Crim.App.1982). We reasoned that "[T]o

permit testimony as to an oral confession (not within any statutory exception) for impeachment would undermine the legislative determination expressed in Article 38.-22." *Butler*, 493 S.W.2d at 198. *See also Alfaro*, 638 S.W.2d at 898.

Consistent with this approach, two Texas courts of appeals have considered precisely the issue presented in the instant cause. *Oliver v. State*, 711 S.W.2d 442, 445 (Tex. App.—Fort Worth 1986, pet. ref'd); *Dees v. State*, 722 S.W.2d 209, 213–14 (Tex.App.—Corpus Christi 1986, pet. ref'd). The Fort Worth Court of Appeals considered a defendant's challenge to the admission of a knife into evidence when the State failed to introduce the arrest warrant. *Oliver*, 711 S.W.2d at 443. After determining that an unauthorized warrantless arrest had in fact occurred, the court refused judicially to amend article 38.23 to include the "independent source" and "inevitable discovery" exceptions to the exclusionary rule. The court concluded that exceptions to the exclusionary rule must evolve from a legislative amendment to article 38.23, and "not by our ruling that the evidence is admissible in direct contradiction to the plain wording of the statute." *Id.* at 445. Likewise, the Corpus Christi Court held, prior to enactment of Subsection (b) of Article 38.23, that a good faith exception to the exclusionary rule did not apply and, therefore, that evidence seized in the absence of probable cause should have been suppressed.

As jurists, we are obliged to implement the expressed will of our legislature, not the will it keeps to itself. The suggestion that some motive can reliably be inferred from the failure of a legislature to enact certain laws or to enact laws of a certain kind is not only tenuous, but dangerous, for it supplants orthodox democratic institutions with a judicial oligarchy.

■ Except under unusual circumstances, therefore, it is best to effectuate

---

2. In 1987, the statute was amended by the legislature to include its sole exception, which reads as follows:

It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting

in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

Art. 38.23 (b), V.A.C.C.P. *See* Act of June 18, 1987, ch. 722, § 1, 1987 Tex.Sess.Law Serv. 2208 (Vernon).

the legislative intent evidenced by the plain language of statutes. *Camacho v. State,* 765 S.W.2d 431, 433 (Tex.Crim.App.1989); *see also Patterson v. State,* 769 S.W.2d 938, 940 (Tex.Crim.App.1989). Otherwise, courts risk invading the legislature's province by reading into the law that which is clearly not there. *Ex Parte Halsted,* 147 Tex.Crim. 453, 458, 182 S.W.2d 479, 482 (1944); *see also Miles v. State,* 157 Tex. Crim. 188, 190, 247 S.W.2d 898, 899 (1952). Accordingly, established rules of statutory construction generally require that, where an express exception exists in a statute, the statute must apply in all cases not excepted. *Ex Parte McIver,* 586 S.W.2d 851, 856 (Tex.Crim.App. [Panel Op.] 1979); *see also State v. Richards,* 157 Tex. 166, 168, 301 S.W.2d 597, 600 (1957). Because we "find" no inevitable discovery exception in article 38.23, we are thus unwilling, as the lower court should have been, to create one by judicial fiat. Certainly, the Legislature has the prerogative to amend Article 38.23 to enact the specific exception to its rule if it chooses. Until that time, however, we must enforce the statute as written, excluding all illegally obtained evidence, with the single exception as set out in the statute.

The judgment of the Court of Appeals is reversed and the cause remanded there for

further consideration not inconsistent with this opinion.

McCORMICK, P.J., concurs in the result.

WHITE and BAIRD, JJ., dissent.

CLINTON, Judge, concurring.

The genesis of Article 38.23, V.A.C.C.P., is former article 727a, derived from Acts 1925, 39th Leg., Ch. 49, p. 186, § 1 (Act).

The Act was preceded by two significant judicial decisions: one, *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914);[1] the other, *Welchek v. State,* 93 Tex.Cr.R. 271, 247 S.W. 524 (1922).[2] One need not browse among files in the Legislative Research Library to find indicia of legislative intent; the Legislature expressed its own determination by declaring in terms admitting no exception, *viz:*

"The fact that there has been used against citizens of this State *evidence obtained in violation of the constitution of the State,* and that *there is now no statute expressly forbidding the same,* creates an emergency and an imperative public necessity...."

Act, supra, § 2.[3]

Contrary to the notion expressed by Judge Miller in his concurring opinion at 1–

---

**1.** *Weeks v. United States,* supra, originated the exclusionary rule in federal courts, *viz:*

"We therefore reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States, acting under color of his office, in direct violation of the constitutional rights of the defendant; that having made seasonable application for their return, which was heard and passed on by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that *the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed."*
*Id.,* 232 U.S. at 398, 34 S.Ct. at 346, 58 L.Ed. at 657 (emphasis here and throughout this opinion is mine unless otherwise indicated).

**2.** "We believe that *nothing in section 9, art. 1 of our Constitution, supra, can be invoked to prevent the use in testimony in a criminal case of physical facts found on the person or premises of one accused of crime,* which are material to the issue in such case, *nor to prevent oral testimony of the fact of such finding which*

*transgresses no rule of evidence otherwise pertinent.*

\*    \*    \*    \*    \*    \*

[W]hen the question is evidence of the possession of the accused of any property whose custody, ownership, or creation by him gives it weight in solving a crime, the method or manner by which such preferred testimony came before the court *cannot be raised by any attempted application of section 9, art. 1, supra, but may only be determined by rules of evidence which are general and have become fixed* in the wisdom of the courts of all civilized countries. If there be sound objection to testimony otherwise material which has been found on the person or in the possession or home of the accused, such objection must rest on *some better reason than that the accused did not consent to its taking or to the entry of such premises."*
*Id.,* 247 S.W. at 529.

**3.** The same Legislature passed a related bill, section 1 of which reproduced Article I, § 9; section 2 made it a penal offense for "any person or peace officer, or state ranger, to search

2, that "mere absence from the Code does not serve to emasculate *a doctrine that previously existed in the common law,*" this Court would certainly be "superlegislating" (his term) to introduce a "doctrine" that was not incorporated explicitly or implicitly when in 1914 the Supreme Court created the federal exclusionary rule in *Weeks,* supra, or when in 1925 our Legislature created the statutory exclusionary rule in the Act. Judge Miller does not demonstrate that the "doctrine" was ever known to the common law of England, and by his own admission the Supreme Court did not adopt and apply it until 1984 in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

Furthermore, the Act was designed to implement protections guaranteed first and foremost by Article I, § 9 of the Texas Constitution. See emergency clause, *ante.* The fact remains that Judge Miller has yet to cite any opinion of this Court construing Article 38.23 to admit exceptions to those protections, and unless and until there is one of significance, the rule of statutory construction for which his opinion opts, in n. 2, at 802, has no application.

With those observations, I join the opinion and judgment of the court.

MILLER, Judge, concurring.

The majority today proffers an opinion which, ironically, does precisely that which it ostensibly seeks to prevent: it substitutes the unfettered philosophy of the judiciary for the true intent of the Legislature. Simultaneously it renders stare decisis meaningless as a court is once again myopically led down the path of hypertechnicality so decried by those outside the judiciary. In so doing, it ignores the reality of our function within a tripartite form of government. While it is not the role of the judicial branch to either engage in "superlegislating", as the term has come to be known, or to be hypersensitive to the will of a crime-tired and punishment-seeking public; it is this Court's role to construe our Code of Criminal Procedure in a manner that simultaneously balances the protection of the defendant and the interests of justice in contemporary society. A properly balanced analysis requires us to interpret the intent of our Legislature; in this case such analysis calls for a continuation of the application of the "inevitable discovery" doctrine in search and seizure law.

Admittedly, Article 38.23 does not specifically carve an exception known as "inevitable discovery" in the manner which the subsequent statutory addition of the "good faith" exception did[1]. The term "inev-

---

the private residence, actual place of habitation, place of business, person or personal possessions of any person, without having first obtained a search warrant as required by law;" section 3 authorized a fine not to exceed $500, or confinement for not more than six months, or both. The emergency clause relied on "The fact that the people are not secure in their persons, homes, papers and possessions from unlawful and unreasonable seizures and searches[.]" Acts 1925, 39th Leg., Ch. 149, p. 357.

That bill became former articles 4a and 4b, C.C.P.1925. It was repealed in 1929, however. But it has been noted that "despite the flood of reversals under former article 727a, the legislature refused to repeal the exclusionary rule and instead reenacted it with only a minor narrowing of its scope." Dawson, *State–Created Exclusionary Rules in Search and Seizure: A Study of the Texas Experience,* 59 Tex.L.Rev. 191, at 201–202.

1. The addition of Subsection b of Article 38.23 can be seen as an attempt by the Texas Legislature to both correct past rulings of this Court

and to bring our State in line with the holding in *United States v. Leon,* 468 U.S. 897, 905, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677, 687 (1984). Past opinions of this Court had consistently failed to apply the "good faith" doctrine, relying instead on an unbending application of Article 38.23. *E.g. Green v. State,* 615 S.W.2d 700, 711–713 (Tex.Crim.App.1980) (McCormick, J. dissenting). Faced with such an interpretation of the statute, Subsection b was added to correct the problem. Thus, the addition of the specific exception was not, as the majority believes, intended to be the exclusive departure from the rule, but rather is intended as a clarification adding and acknowledging a provision where this Court had historically failed to do so. That addition reads as follows:

(b) It is *an* exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

Tex.Code Crim.Proc.Ann. art. 38.23(b) (Vernon supp.1988) (emphasis added). The language

itable discovery" in fact came in to fashion some time after the adoption of the 1965 Code. But the mere absence of the term from the Code does not serve to emasculate a doctrine[2] that previously existed in the common law[3]. This Court has indicated that the concept of the doctrine existed long before the United States Supreme Court adopted and applied the term "inevitable discovery" in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). *E.g. Miller v. State*, 667 S.W.2d 773, 778 (Tex.Crim.App.1984) (rationale of doctrine used although term inevitable discovery not used); *Vanderbilt v. State*, 629 S.W.2d 709, 722 (Tex.Crim.App.1981), *cert. den.*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982) (same); *See* Judge Marvin O. Teague, *Applications of the Exclusionary Rule*, 23 S.Tex.L.J. 633, 648 (1982) (holding in *Vanderbilt* implies approval of Inevitable Discovery Doctrine).

As we noted in our opinion in *Garza v. State:*

As pointed out by former Presiding Judge Onion in an earlier work, this Court has never held that Article 38.23 ... absolutely prevents the application of the several exceptions to the application of the exclusionary rule that have evolved over the years. In *Vanderbilt* [*supra*], this Court noted that the "[t]hree commonly advanced exceptions to the exclusionary rule include the 'independent source,' 'inevitable discovery,'

and 'attenuation' doctrines." With respect to the doctrine of inevitable discovery, the United States Supreme Court adopted and explained the inevitable discovery concept in *Nix* [*supra*]:

"If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." [Citations omitted].

This court has previously applied the principle of inevitable discovery to testimony of witnesses whose discovery was imminent absent illegal state action. See *Vanderbilt*, supra at 722; *Wicker* [*supra*] (Victim's body would have been recovered regardless of the information furnished by defendant's second oral statement); *Dickey* [*supra*] ("Where evidence is obtained after a defendant's constitutional rights have been violated, if the prosecution can establish information by a preponderance of the evidence that the information ultimately or inevitably would have been discovered *by lawful means*, then the deterrence rationale has so little basis that the evidence should have been received.") [Emphasis in original]; *Bell* [*supra*] (Evidence admissible under the rationale of inevitable discovery). In none of the above cases, or any others we have researched, did Arti-

used implies that other exceptions to the Article exist; it states only that "good faith" is one of those exceptions.

**2.** Numerous decisions of Texas' appellate courts have held that once a court (particularly the court of highest jurisdiction) has interpreted a statute, subsequent inaction on the part of the legislature amounts to approval of that court's interpretation. *Lockhart v. State*, 150 Tex.Crim. 230, 200 S.W.2d 164, 167–168 (Tex.Crim.App. 1947) (Opinion on Motion for Rehearing); *Garcia v. State*, 140 Tex.Crim. 340, 145 S.W.2d 180, 181–182 (Tex.Crim.App.1940); *Jensen Assoc., Inc. v. Bullock*, 531 S.W.2d 593, 601–602 (Tex. 1976); *Moss v. Gibbs*, 370 S.W.2d 452, 458 (Tex. 1963); *Aven v. Green*, 316 S.W.2d 78 (Tex.App.— Waco 1958), *rev'd on other grounds*, 159 Tex. 361, 320 S.W.2d 660 (1959); *Cf. Hill v. State*, 827 S.W.2d 860, 864 (Tex.Crim.App., 1992) ("When the legislature speaks to an issue subsequent to

this or any other court's decision on the issue, and the effect of the legislation is to modify existing caselaw, the statute shall control unless it is unconstitutional.") (plurality); *Watson v. State*, 532 S.W.2d 619, 622 (Tex.Crim.App.1976) (applied statute strictly as no cases in area prior to adoption of new penal code). The greater the interval of inaction, the more certain the correctness of the interpretation. *Id.*

**3.** *Bell v. State*, 724 S.W.2d 780, 793 (Tex.Crim. App.1986), *cert. den.*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Dickey v. State*, 716 S.W.2d 499, 505 (Tex.Crim.App.1986) (discussing existence of "inevitable discovery" although court of appeals' application was incorrect); *Wicker v. State*, 667 S.W.2d 137, 141–142 (Tex. Crim.App.1984), *cert. den.*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); *Earnest v. State*, 791 S.W.2d 654, 656 (Tex.App.—Beaumont 1990, no pet.).

cle 38.23, supra, proscribe the admission of previously tainted evidence in light of the recognized exception to the rule.

771 S.W.2d 549, 550–551 n. 1 (Tex.Crim. App.1989) (plurality). Thus, the inevitable discovery principle, regardless of its name, had existed for years prior to the 1988 implementation of Subsection b, and, at the time of Subsection b's addition, no other changes to the predecessor Article 727a were made. I conclude that the Legislature did not intend to change the manner in which Texas courts have traditionally dealt with this issue, *Green,* 615 S.W.2d at 711–713, and in fact ratified our prior decisions. *See* fn. 2, *supra.*

Additionally, common sense tells one that strict application of this particular Article produces an absurd result. The truth is that a defendant confronted with this type of scenario is no better off with Article 38.23 than without, because the outcome remains the same. Evidence of the crime, ultimately discoverable by legal means, would have been untainted and, therefore, admissible. Thus suppression is an exercise in futility. Furthermore, it is illogical to assume that merely because Article 38.23 reads, in a vacuum, as though it proscribes the admission of any evidence not strictly complying therewith, that the statute provides more protection than the Fourth Amendment to the United States Constitution. As this Court has previously held, Texas law, like federal law, does not require a defendant to object in order to invoke the protections of Article 38.23. *Polk v. State,* 738 S.W.2d 274, 275–276 (Tex.Crim.App.1987) (provisions of Article 38.23 are automatically invoked). Instead, it is the State that must justify its position in every case. It is difficult to imagine how a defendant will be harmed if the State, by a preponderance standard, must always prove it would have independently unearthed the evidence. As pointed out in *Nix,* the "'vast majority' of all courts, both state and federal" recognize the sound logic of the "inevitable discovery" doctrine. 467 U.S. at 440, 104 S.Ct. at 2507. *Vanderbilt* and *Miller* are among the Texas cases to which the High Court was no doubt referring.

Appropriately enough, this case strongly indicates both the soundness of the doctrine's built-in safeguards and how it best operates in Texas. Having reviewed the evidence presented in the instant case, I must agree that the State has failed to carry its burden. The majority decides the statute precludes prosecution and will reverse for that reason. After careful review of the record, I believe the State failed to prove by preponderance of the evidence that they would have ultimately discovered and preserved (by photograph or testimony) the bruise marks found on the appellant's stomach had they not engaged in an illegal warrantless arrest in violation of the Fourth Amendment to the United States Constitution. The State having failed to carry its burden under the now labelled doctrine of inevitable discovery, appellant's conviction should, for that reason, be reversed.

Therefore, I respectfully concur only with the result the majority's opinion reaches this day.

CAMPBELL, J., joins this concurring opinion.