**The STATE of Texas, Appellant,**

v.

**Lonnie Earl JOHNSON, Appellee.**

**No. 6–92–128–CR.**

Court of Appeals of Texas,
Texarkana.

Dec. 8, 1992.

John B. Holmes, Dist. Atty., Houston, for appellant.

Alvin Nunnery, Robert Morrow, Hocker, Rodriquez, Morrow & Walker, Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Lonnie Earl Johnson has been charged with capital murder. The State appeals the trial court's order suppressing Johnson's post-arrest statement to the police. The trial court found that the police lacked probable cause in making the warrantless arrest. We overrule the suppression of the statement.

The State contends that the trial court erred in finding no probable cause and in suppressing Johnson's statement (1) because Johnson committed the felony of burglary of a vehicle in the view of the arresting officer, (2) because Johnson was in a suspicious place at the time of the arrest, (3) because Johnson was about to escape, and (4) because the attenuation doctrine is still in effect in Texas and is met by these facts. Johnson contends that the record does not support the State's claim that the evidence in question is of substantial im-portance to its case, and therefore the appeal is not properly before this Court.

Max Cox, a police officer with the Harris County Sheriff's Department, testified that during the course of an investigation of a double homicide, he came to suspect Johnson as the killer and discovered that Johnson had fled to Austin. On August 29, 1990, Cox learned that G.W. Hildebrand of the Texas Rangers had taken a statement from Lisa Jeter, Johnson's girlfriend, who worked at an Austin strip bar called The Lady. Cox received a copy of Jeter's statement, in which Jeter says that Johnson told her that he killed the two victims because they owed him money from a drug deal. Cox then drafted an arrest warrant and notified Hildebrand that he was in the process of getting the warrant signed by a Harris County judge.

Bruce Boardman, an officer with the Austin Police Department, testified that he helped Ranger Hildebrand locate Jeter. After obtaining a statement from Jeter, Hildebrand and Sergeant Eddy Balagia of the Austin police left the police station to go to a house where Jeter said the murder weapon had been traded for drugs. The officers then sought to return Jeter to her car, which was parked at her place of employment. Sometime after midnight on August 30, when the officers and Jeter were approaching The Lady, Jeter noticed Johnson in front of the bar. According to Hildebrand, Jeter told the officers that Johnson was probably going to take her car, that she had not given him permission to use her car, that he did not have keys to it, and that she did not want him to take it.

Hildebrand testified that he felt that she was reliable. He based his opinion on the fact that Jeter had revealed to the police the location in San Marcos where Johnson left a truck taken from the victims. The police subsequently confirmed the accuracy of the information.

Johnson was arrested by Officer Board-man at approximately 1:30 a.m. Around 2:30 a.m., Johnson was brought to the station; and at 2:50 a.m., Hildebrand read him his rights. Johnson began his oral confes-

sion at around 3:30 a.m. At 3:50 a.m., the arrest warrant was signed by a Harris County judge, and Officer Cox then left for Austin. Johnson gave both oral and written statements confessing that he had shot both victims but claiming that his actions were in self-defense. Johnson's written statement indicates that it began at 5:05 a.m.

At the hearing on the admissibility of the statement, Johnson testified that on August 29 he was staying with Jeter in Austin and that night he went to The Lady looking for her. When he did not find Jeter, he got in her unlocked car to wait. After a few minutes, he got out of the car and walked toward the club. He was then arrested by the officers. According to Johnson, the officers did not question him about a car theft or read him his rights. He further claimed that he did not make the statements contained in the written statement which he signed and that the police promised to help him if he would make a statement.

After the trial court granted Johnson's motion to suppress the statement, the State gave notice of an interlocutory appeal on the issue, complete with the prosecutor's certification that the statement is of substantial importance to the case as required by TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(5) (Vernon Supp.1992). Johnson contested the State's right to appeal and requested a hearing. At the hearing, Johnson sought to question the State regarding the importance of Johnson's statement to the prosecution. The trial court refused this request, saying that it lacked jurisdiction to make inquiry regarding the notice of appeal.

I. JURISDICTION

■ Johnson contends that the State is not entitled to appeal the suppression of the statement, because the record does not support the State's claim that the question is of substantial importance to its case as required by Article 44.01(a)(5).

The State argues that Johnson's jurisdictional point is not properly before this Court. It is well established that TEX.CODE CRIM.PROC.ANN. art. 44.01 (Vernon Supp. 1992) does not allow the defendant to argue a cross-point of error when the State has made an interlocutory appeal. *See, e.g., State v. Garcia,* 823 S.W.2d 793 (Tex. App.—San Antonio 1992, pet. ref'd); *State v. Kost,* 785 S.W.2d 936 (Tex.App.—San Antonio 1990, pet. ref'd). However, neither of these cases involved a situation in which the defendant is replying to the points of error brought by the State. Johnson's reply does not raise any new issues before the Court, but is a part of his rebuttal argument against the points of error raised by the State. *See* TEX.R.APP.P. 74(e).

■ In order to accept an appeal, a court of appeals must have jurisdiction; lack of jurisdiction is fundamental error with or without a proper assignment of error. *Minze v. Coon,* 584 S.W.2d 337 (Tex.Civ. App.—Tyler 1979, no writ). We therefore will consider Johnson's jurisdictional argument.

Article 44.01 provides that:

(a) The state is entitled to appeal an order of a court in a criminal case if the order:

. . . .

(5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case.

Johnson contends that this article permits the State to appeal only when the suppression of the evidence in question would be tantamount to releasing the defendant because the State could no longer prosecute.

If the Legislature intended for the courts to determine whether a disputed piece of evidence is of substantial importance to the State's case, then there would not be a requirement of certification by the prosecuting attorney. The prosecutor has the discretion to determine trial strategy and the degree of reliance on particular evidence, and the courts should not dilute this

authority. By the plain language of Article 44.01, so long as the prosecuting attorney certifies to the court that the appeal is not being taken for the purposes of delay and that the evidence in question is of substantial importance to the State's case, then the State may appeal. *See In re Grand Jury Investigation*, 599 F.2d 1224, 1226 (3d Cir.1979) (construing the federal counterpart to Article 44.01 found at 18 U.S.C. § 3731, the court said: "The district court having received this certification, we are not required by section 3731 to evaluate independently the substantiality or materiality of the contested material").

## II. PROBABLE CAUSE

 The State contends that the trial court erred in finding that no probable cause existed for the warrantless arrest of Johnson. The State asserts first that probable cause existed for the arrest because Johnson was committing the crime of burglary of a vehicle in the officers' presence. If the record supports the trial court's findings, then the court's ruling should be upheld unless the court abused its discretion and improperly applied the law to the facts. *Johnson v. State*, 698 S.W.2d 154, 159 (Tex. Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

The State takes the position that the trial court affirmatively found that Johnson was committing the offense of burglary of a vehicle when arrested. The State also suggests that the trial court based its finding of no probable cause on the fact that Johnson was not arrested for the burglary but for homicide.

 The question in regard to probable cause is not whether the arresting officer subjectively thought that he had probable cause to arrest the defendant, but whether the officer was presented with objective facts justifying the arrest. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Cr.App.

1992); *Voelkel v. State*, 717 S.W.2d 314 (Tex.Crim.App.1986).

The State concludes that, since the trial court found as fact that Boardman saw Johnson enter Jeter's car, and Jeter told Boardman that he did not have permission to do so, then Boardman had probable cause to arrest Johnson, even though he did not charge him with burglary of a vehicle.

This interpretation of the fact findings of the court is incorrect. In the section of the court's findings of fact cited by the State as showing a finding of burglary, the trial court is expressly encapsulating the testimony of the arresting officer, Bruce Boardman, to illustrate just why the court found the testimony contradictory. The court did not indicate acceptance of anything that Boardman testified to as fact. The court stated that:

> [the] portion of Sergeant Boardman's testimony wherein he relates that the reason he arrested the defendant was that the defendant did not have permission to be in Ms. Jeter's car is not credible. Sergeant Boardman's clearly stated reason for arresting the defendant was "because of the capital murder case" and this defendant was not arrested for a burglary of a motor vehicle.

The State contends that this passage does not express a disbelief in the fact that Johnson committed burglary of a vehicle in view of the officer. The State claims that the court did not accept the Boardman's explanation for why he arrested Johnson. The passage above does not indicate that the court affirmatively found facts indicating that Johnson did burglarize the vehicle. Additionally, the trial court noted that Boardman testified to the fact that Jeter had once before filed a police incident report accusing Johnson of using her car without her permission.[1] The trial court, however, made no finding that Johnson burglarized Jeter's car, and no such inference can be made from the facts that the trial court found. We therefore overrule this point of error.

---

1. The report was treated as an allegation of unauthorized use of a motor vehicle because Jeter had let Johnson use the vehicle before. Jeter had abandoned this complaint, which was a month old at the time of the arrest, and Jeter had continued to see Johnson socially after filing the report.

■ The State next contends that the arresting officers had probable cause to arrest Johnson under TEX.CODE CRIM.PROC. ANN. art. 14.03(a)(1) (Vernon Supp.1992). That provision states that an officer may arrest without a warrant "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws." Few places are considered suspicious in themselves; rather, it is the existence of additional facts and reasonable inferences therefrom which may make the defendant's presence in a place suspicious. *Johnson v. State*, 722 S.W.2d 417, 421 (Tex.Crim.App. 1986).

The State contends that, since Boardman was told by Jeter that Johnson did not have her permission to be in her car and Jeter had previously reported her car stolen, Boardman had probable cause to suspect that Johnson was committing burglary of a motor vehicle and was about to commit unauthorized use of a motor vehicle. According to the State, when Johnson entered the car, the car became a suspicious place.

Under this point of error, the State is simply reformatting the arguments it made under the preceding point. The State again misreads the trial court's findings of fact to establish that Johnson did enter Jeter's vehicle without her permission. Although a report had been filed at one time claiming that the car had been stolen, the report had been abandoned by Jeter, and Jeter admitted at the time that she had let Johnson use the vehicle in the past. Furthermore, Jeter told the officers that Johnson did not have keys to the car, and the officers did not observe Johnson attempt to start the vehicle. He merely sat in the car for a time before the arrest. This is hardly the action of someone who knows he should not be in the car. This point of error is overruled.

■ The State next contends that the arresting officers had probable cause to arrest Johnson without a warrant because Johnson was about to escape. TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977) states:

Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

The State contends that the trial court's findings demonstrate that the police had sufficient proof to believe that Johnson killed two people in Harris County and that he was about to escape.

The trial court found that Johnson was a suspect in the murders and that Jeter had given a statement to the police implicating Johnson. Although Jeter's statement is not in the record, the arrest warrant affidavit was apparently based largely on Jeter's statement and is a summary of the information which the police had at the time of the arrest. According to the affidavit, Jeter said that Johnson showed up at her hotel room in Austin on the morning of August 15, at which time he told her that he had just killed two white men in Harris County by shooting them in the head. Also according to the affidavit, Johnson showed Jeter a semi-automatic pistol and said that the victims owed him drug money. Furthermore, Johnson had a white pickup truck with him which he claimed to have taken from his victims, and which four days later he drove to San Marcos and left in a restaurant parking lot. San Marcos authorities discovered a truck fitting the description of the victims' vehicle where Jeter said it would be. According to the arrest warrant, Johnson later exchanged the murder weapon for drugs.

Given the statement by Jeter, the finding of the victims' vehicle where she said it would be, and Johnson's trip from Harris County to Austin on the night of the murders, the police had sufficient proof under Article 14.04 to suspect that Johnson had committed a felony.

The question now becomes whether the police had satisfactory proof that Johnson was likely to escape before the arrest war-

rant could arrive from Houston. Jeter advised the officers that Johnson had been hanging out in the area for some time and that occasionally he would visit her. Johnson possessed no other known ties to the community.

Article 14.04 does not require proof that the defendant was actually about to escape; rather, the State must show that "the arresting officer was acting upon satisfactory proof from representations by a credible person that the felony offender is about to escape, so that there is no time to procure a warrant." *Fry v. State*, 639 S.W.2d 463, 476 (Tex.Crim.App. [Panel Op.] 1982).

The State suggests that the case of *King v. State*, 631 S.W.2d 486 (Tex.Crim.App. 1982), is very similar to these facts. In *King*, the defendant, whose photograph had been chosen by the complainant as that of her assailant, was arrested when he left his home, got into his truck, and proceeded to drive off. The arresting officer in the *King* case first came to suspect the defendant when the officer pulled over a truck which had been identified as that of the perpetrator of a crime. The vehicle was being driven by someone who showed the officer the defendant's driver's license as proof that the defendant allowed him to use it. The officer allowed the driver to leave and then told another officer to set up surveillance of the defendant's residence. When the defendant left the house, got into the truck, and proceeded to drive off, the officer arrested him. The court held that the officers' actions were reasonable because they objectively could have assumed that the earlier driver of the vehicle probably told the defendant about being stopped and questioned by the police. Upon hearing this, the defendant was likely to attempt escape.

In the present case, Johnson had no reason to know that the police suspected him. Although the police drove by The Lady with Jeter in the vehicle, and they had Johnson under surveillance until the time

of the arrest, there is no indication that Johnson had reason to know of the police activity. Furthermore, Johnson made no attempt to leave the parking lot of The Lady where he was arrested. The State contends that since Johnson had already fled Harris County, the police were reasonable in their assumption that Johnson's entering his girlfriend's car without permission meant that he was about to escape.

Johnson, however, did not break into Jeter's car. He merely got into it and sat for some time. The officers knew from Jeter that Johnson did not have keys to the car, and there is no suggestion that he ever tried to start the vehicle. Regardless of whether Jeter is a credible informant, the facts of this case do not suggest that Johnson was contemplating escape. The State offers no reason why Johnson would be more likely to escape on that particular night as opposed to any other; no co-conspirators had been arrested, and Johnson had no reason to suspect that he was under any kind of surveillance. *See Stanton v. State*, 743 S.W.2d 233 (Tex.Crim.App.1988) (reversing a lower court opinion which had held that escape was shown when the defendant was merely leaving one place to go to another). This point of error is overruled.

## III. ATTENUATION

■ The State next contends that the trial court erred in concluding as a matter of law that the attenuation doctrine is no longer viable due to the Court of Criminal Appeals' decision in *Garcia v. State*, 829 S.W.2d 796 (Tex.Crim.App.1992). The trial court originally ruled that, although the initial arrest of Johnson was illegal, the taint that it put on the statement was attenuated and, therefore, the statement would be admissible. The court then reversed itself because it believed that the *Garcia* case exterminated the attenuation doctrine in Texas.[2]

---

2. In its conclusions of law the trial court stated: But for the Texas Court of Criminal Appeals decision in the *Randall Anthony Garcia*, 829 S.W.2d 796 (Tex.Cr.App.1992), the taint of the

defendant's unlawful arrest was sufficiently attentuated (sic) to allow for the introduction into evidence of the defendant's statement.

The *Garcia* case involved a dispute over the admissibility of photographs of the defendant showing a bruise on his abdomen. The defendant sought the suppression of the photographs on the grounds that they resulted from an illegal arrest. The court of appeals said that the evidence would have been discovered inevitably and held the photographs admissible despite the illegal arrest. In reversing the court of appeals, the Court of Criminal Appeals pointed out that TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1992), which provides that no evidence obtained by illegal means should be admissible against the accused, has only one legislatively created exception, i.e. when the arresting officer is acting in good faith reliance on a warrant issued by a magistrate based on probable cause. The Court then said that to judicially approve any other exception to the rule—specifically in *Garcia,* the inevitable discovery rule—would be to usurp the power and function of the legislative branch of government.

The controlling opinion in *Garcia* is a plurality opinion in which only three judges joined, with an additional judge concurring but writing separately, and three more concurring in the result. The precedential value of *Garcia* is weak. *See Farris v. State,* 819 S.W.2d 490 (Tex.Crim.App.1990) (plurality opinions of the court are not as forceful as majority opinions). *Garcia* should therefore be limited to its specific holding, i.e. the inevitable discovery rule is not available as an exception to Article 38.23.

■■■ Regardless of the precedential value placed on *Garcia,* the attenuation doctrine continues to exist in Texas because it is less of an exception to Article 38.23 than it is a complement to the rule. Article 38.23 applies only when evidence is obtained as a result of illegal conduct on the part of the police. The attenuation doctrine suggests that, if the evidence in question is so attenuated from the illegal conduct that it cannot be said to be a product of the illegality, then Article 38.23 does not apply. In other words, the attenuation doctrine is a rule of application for

determining when contested evidence is the product of illegal activity on the part of the police. Statements by accused persons are not immune from application of the doctrine. *Beasley v. State,* 728 S.W.2d 353 (Tex.Crim.App.1987).

The attenuation doctrine has been applied a number of times in Texas. The doctrine was adopted in *Bell v. State,* 724 S.W.2d 780 (Tex.Crim.App.1986). A clear majority of the court backed the opinion in *Bell,* and the decision has never been repudiated. To the contrary, several later cases have used the doctrine. *See, e.g., Comer v. State,* 776 S.W.2d 191 (Tex.Crim.App.1989); *Garza v. State,* 771 S.W.2d 549 (Tex.Crim. App.1989).

The trial court originally held that the taint of the illegal arrest was attenuated by the fact that a proper arrest warrant was issued before Johnson gave his written statement.

Johnson contends that the trial court was incorrect when it stated in its conclusions of law that, if the attenuation doctrine were in force in this case, the taint was attenuated. Since we hold that the attenuation doctrine is still in force, we must now decide whether the trial court was correct in saying that the illegal arrest was attenuated from the obtaining of Johnson's statement.

The trial court's findings included the following: (1) Johnson was arrested at around 1:30 a.m. on the morning of August 30; (2) at 2:50 a.m., Johnson was read his *Miranda*[3] warnings at the police station; (3) at approximately 3:00 a.m., Officers Balagia and Hildebrand made initial contact with Johnson after his arrest; (4) Hildebrand then left the interview room for approximately forty-five minutes, but Boardman and Balagia stayed with Johnson; (5) Johnson began his oral confession at around 3:30 a.m.; (6) the arrest warrant was signed by a district judge in Harris County at 3:50 a.m.; (7) Johnson's written statement reflects that it began at 5:05 a.m.; and (8) Johnson signed the statement at 7:00 a.m. The court also found that no

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

attempt to locate a magistrate was made to give Johnson his magistrate warnings, that he was not coerced or promised anything in return for his signature on the written statement, and that he did not ask for an attorney or for the interview to be terminated. Johnson received warnings by a magistrate at 9:50 that morning.

In *Bell*, 724 S.W.2d at 788, the Texas Court of Criminal Appeals adopted the analysis formulated by the United States Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In *Brown*, the Court provided four factors to be weighed in deciding whether the taint was attenuated, including: (1) the giving of *Miranda* warnings, (2) the temporal proximity of the arrest to the statement, (3) the existence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct. *Brown*, 95 S.Ct. at 2256.

The trial court found that Johnson received *Miranda* warnings. This, however, is not dispositive of the attenuation question. See, *Bell*, 724 S.W.2d at 788 (repeated warnings are not alone sufficient); *but cf. Little v. State*, 758 S.W.2d 551, 566 (Tex.Crim.App.1988) ("*Miranda* warnings are an important factor in determining whether the confession was obtained by exploitation of an illegal arrest").

At least one court has said that the "temporal proximity" factor is not a very important factor and certainly is not dispositive. *Little*, 758 S.W.2d at 566. The relevant period of time for temporal proximity analysis is that running from the illegal arrest to the signing of the written statement. *Beasley v. State*, 728 S.W.2d at 355 (lapse between arrest and statement was seven hours even though defendant was questioned immediately after the arrest); *Townsley v. State*, 652 S.W.2d 791, 798 (Tex.Crim.App.1983) (time runs from arrest to the first written statement). In *Bell*, the court found that a lapse of between one and a half to three hours favored the defendant, but the fact that over a day elapsed before the second confession favored the State. In *Beasley*, the court considered a seven-hour gap a close call

and looked to the intervening circumstances subtest.

Here, the trial court found that Johnson signed the written statement approximately six and one-half hours after the arrest. The officers began questioning him within an hour after the arrest. The police then subjected him to constant interrogation for about four and one-half hours before they obtained his signature on the statement. The time elapsed here is less than that the time allowed to elapse in these cases: *Bell*, 724 S.W.2d 780; *Brown*, 422 U.S. 590, 95 S.Ct. 2254; *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In each of these cases, the temporal proximity factor weighed in favor of the defendant. We reach the same conclusion in this cause.

The intervening circumstances factor has been called "the most important." *Townsley*, 652 S.W.2d at 797. The State contends that the arrival of the proper arrest warrant from Harris County "transformed" the illegal arrest into a legal one and that this intervening event is enough to make the statement admissible. In *Bell*, the Court of Criminal Appeals said that: "Since the illegality was the lack of a warrant, after the warrant was obtained the causal relationship between the illegal arrest and subsequent evidence was severed." *Id.* at 791. This factor therefore favors the State, but only slightly, given the absence of other potentially intervening events such as the administration of magistrate warnings, the termination of custody, or consultation with an attorney.

The final factor under *Brown* concerns the purpose and flagrancy of the misconduct by the police. Johnson contends that the police were flagrant and purposeful in that they incarcerated him without probable cause and then interrogated him continuously until he signed a statement. The holding of a defendant knowing that no probable cause exists to do so has been held to be a substantially flagrant and purposeful action. *Townsley*, 652 S.W.2d at 797. Other examples of such actions include making an arrest that is unnecessari-

ly intrusive on personal privacy and subjecting the defendant to continuous interrogation. *Bell*, 724 S.W.2d at 789.

The only instance of misconduct by the police in this case is the arrest and detention of Johnson before the warrant arrived. At the time of the arrest, a police officer in Harris County was diligently attempting to secure a warrant and in fact did so not long after the arrest. Additionally, there is no evidence that the arresting officer knew that no probable cause existed to arrest Johnson. The last factor therefore weighs in favor of the State.

Since Johnson received *Miranda* warnings, the arrest warrant arrived before he signed the written statement, and the police did not act in a flagrant and purposeful manner, we find that three of the four *Brown* factors weigh in favor of the State. We therefore hold that the trial court correctly stated in its conclusions of law that the taint of the illegal arrest was attenuated from the obtaining of Johnson's statement. The statement is admissible.

The order of the trial court is reversed and remanded for further proceedings in accordance with this opinion.