**Danny Joe DAUGHERTY, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2-93-007-CR.**

Court of Appeals of Texas,
Fort Worth.

May 10, 1994.

Rehearing Overruled June 28, 1994.

Jeff Kearney, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall, Charles M. Mallin, Asst. Chiefs of Appellate Section, Jane Ritter, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before FARRIS, WEAVER and DAY, JJ.

OPINION

WEAVER, Justice.

Appellant, Danny Joe Daugherty, was convicted by a jury of the offense of burglary of a habitation. *See* TEX.PENAL CODE ANN. § 30.02 (Vernon 1989). The jury assessed appellant's punishment, enhanced by two prior felony convictions, at ninety years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction through three points of error. In point of error one appellant challenges the trial court's denial of his motion to suppress evidence seized from his vehicle, and in points two and three he contends the trial court erred by including certain instructions in the jury charge. Because we hold that the trial court erred in denying

appellant's motion to suppress, we reverse the judgment of the trial court and remand this cause for a new trial.

### FACTS LEADING TO SEIZURE OF CONTESTED EVIDENCE

During the middle to late months of 1989, the Dove Creek subdivision of Southlake was experiencing problems with daytime residential burglaries. Richard Hart, a Southlake police officer, testified that there were probably five to six burglaries during a three-month period in this subdivision.

On September 14, 1989, around 10:30 or 10:45 a.m., Hart was patrolling the subdivision in a marked patrol car. Hart was driving in the 3000 block of Flamingo when he noticed a brown pickup parked on the side of the road. As Hart approached the pickup in his patrol car, he noticed appellant, the sole occupant of the pickup, duck down in the seat. His suspicions aroused, Hart made a right turn on the next street, drove about half a block, and then turned his car around and positioned it where he could watch the pickup and appellant.

A short time later, Hart saw appellant get out of the pickup and walk up to the house at 1379 Peninsula. Appellant glanced in a large plate-glass window. He then knocked on the front door and immediately put his hand on the doorknob. Hart then observed appellant walk around to one side of the house. Appellant was out of Hart's sight for about a minute, then he walked back around the house to the other side and headed toward the rear of the house. When appellant came back out from the rear of the house, he walked down the driveway, stopped and looked both ways down the street, and then walked back to his pickup. Appellant got into his pickup and drove off. Hart then followed appellant and made a traffic stop a short distance from the house.

When Hart approached appellant to ask for his driver's license and proof of insurance, he noticed several tools inside the pickup that he testified were consistent with burglary tools. Appellant told Hart he did not have a driver's license with him, but he identified himself as Danny Joe Daugherty. Hart then asked him to step to the rear of the pickup. Appellant told Hart that his proof of insurance was in the glove box, so both men walked up to the passenger side of the pickup. Hart opened the glove box himself to check for weapons. Once Hart was satisfied there were no weapons in the glove box, appellant got his card showing proof of insurance on the pickup and gave it to Hart.

After appellant produced the insurance card, Hart asked him to step to the rear of the pickup. As Hart turned to walk back with appellant, he noticed two small jewelry boxes or ring cases on the seat next to where appellant had been sitting. These jewelry boxes looked out of place to Hart because the pickup looked like a work truck and had various tools in it, so he reached into the pickup and retrieved the boxes to see if anything was in them. Hart opened the boxes and found five rings inside. The design of one of the rings spelled out the name "MIKE." This further aroused his suspicions, and Hart asked appellant where he got the jewelry. Appellant told Hart he had purchased it at a flea market the previous day.

Hart had previously requested his dispatcher to run a routine driver's license and warrant check on appellant based on the name and date of birth that appellant had given him, but at this point in time the dispatcher had not called back with any information. The dispatcher called back as Hart and appellant were walking to the rear of the truck. When Hart answered, the dispatcher told him she could not locate a driver's license for the name and date of birth appellant had given Hart, and she also informed him appellant did not have any outstanding warrants. Hart then told appellant that since he could not find a driver's license for him, he was not sure appellant was giving him the right name, so Hart arrested appellant for operating a vehicle without a valid driver's license. Thus, it was not until after he had taken the jewelry boxes from appellant's pickup that Hart decided to arrest appellant. Appellant was released from jail around 5:30 p.m.

On the same day of appellant's arrest, Michael Davis returned home from work to his house in the Dove Creek subdivision and noticed several irregularities. Upon further

investigation, he discovered five rings missing from his bedroom, including a signet ring that spelled the name "MIKE." That evening Davis went to the Southlake Police Station and identified as his the five rings and the two jewelry boxes that had been seized from appellant. He also identified a pair of leather gloves that had been seized from appellant. Officers of the Southlake Police Department obtained a warrant and arrested appellant during the early morning hours of September 15, 1989. Appellant was subsequently convicted of the burglary of Davis's house. He does not challenge the sufficiency of the evidence to support this conviction.

## APPELLANT'S MOTION TO SUPPRESS

In his first point of error, appellant complains of the trial court's denial of his motion to suppress the evidence seized from his vehicle. Appellant contends the jewelry would not have been "ultimately discovered" during a routine inventory as found by the trial court because, according to appellant, the Southlake Police Department did not have an inventory policy. Appellant also contends the "ultimate discovery" or "inevitable discovery" exceptions to the fourth amendment warrant requirements do not apply to article 38.23 [1] of the Texas Code of Criminal Procedure, which appellant specifically raised in his motion to suppress.

During the hearing on appellant's motion to suppress the prosecutor made the following argument:

Your Honor, the Defendant's vehicle was also inventoried per Southlake policy. This officer would have discovered those items, anyway.

At the conclusion of the hearing, the court made the following findings of fact and conclusions of law which were consistent with the prosecutor's argument:

The officer had an articulable suspicion which justified him stopping the vehicle.

He arrested the Defendant for driving without a driver's license, which he had a right to do.

There is some question as to whether or not he should have touched the jewelry box at that time, *but they would have been ultimately discovered in the routine inventory search.* [Emphasis added.]

Thus, it is clear the trial court denied appellant's motion to suppress on the basis of the "ultimate discovery" or "inevitable discovery" exceptions to the fourth amendment.

In a plurality opinion, the Texas Court of Criminal Appeals has recently held that the inevitable discovery doctrine does not apply to the statutory exclusionary rule of article 38.23. *Garcia v. State,* 829 S.W.2d 796, 798 (Tex.Crim.App.1992) (plurality opinion). *See also Oliver v. State,* 711 S.W.2d 442, 445 (Tex.App.—Fort Worth 1986, pet. ref'd) (judicial exception of "inevitable discovery" does not apply to exclusionary rule of article 38.-23). *Garcia* and *Oliver* both indicated that if such an exception is to be applied to article 38.23, it must come by way of legislative amendment and not by judicial creation. *See Garcia,* 829 S.W.2d at 799–800; *Oliver,* 711 S.W.2d at 445. Thus, the trial court should not have denied appellant's motion to suppress on the basis that the stolen jewelry would have ultimately been discovered during a routine inventory.

The State argues that even if the evidence was not admissible on the basis it would have been ultimately discovered during the inventory of the pickup, it is still admissible as evidence seized during a valid search incident to arrest. *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). However, Hart did not testify that he had made up his mind to arrest appellant for driving without a license before he took the jewelry boxes. In fact, Hart's testimony indicates he did not

---

1. Article 38.23 reads as follows:

   **Art. 38.23. [727a] Evidence not to be used**
   (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

   . . . .

   (b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.
   TEX.CRIM.PROC.CODE ANN. art. 38.23 (Vernon Supp. 1994).

decide to arrest appellant until after the dispatcher informed him she could not locate a driver's license for the name and birth date appellant had given Hart. This occurred after Hart had already taken the jewelry boxes from appellant's pickup. Based on these facts, the search that revealed the stolen jewelry was not a valid search incident to a lawful arrest. *See Davis v. State*, 576 S.W.2d 378, 379–80 (Tex.Crim.App. [Panel Op.] 1978).

Because there is no inevitable discovery exception to the exclusionary rule of article 38.23, and because the search was not a valid search incident to an arrest, the trial court erred in denying appellant's motion to suppress. Appellant's first point of error is sustained.

In point of error two appellant contends the trial court erred by instructing the jury that "[a]ny peace officer may stop and detain a motor vehicle operator for the purpose of determining whether such person has a driver's license," and in point three he alleges the trial court impermissibly commented on the weight of the evidence by instructing the jury regarding "recent unexplained possession of stolen property." In light of our disposition of appellant's first point of error, we need not address these points.

The judgment of the trial court is reversed and this cause is remanded for a new trial.