Billy Delbert DICKEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 501-85.

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

John Hoestenbach, Odessa, for appellant.

Stephen Ellis, Dist. Atty. and Fred Franklin, Asst. Dist. Atty., Brownwood, Tex., Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

The appellant was convicted of aggravated possession of a controlled substance, namely, methamphetamine, in the amount of more than 28 grams but less than 400 grams. The jury assessed his punishment at 25 years' imprisonment.

On appeal the appellant asserted in a sole ground of error that the trial court erred in overruling his pre-trial motion to suppress certain evidence because the evidence was the product of an illegal warrantless arrest and search or searches.

The Court of Appeals affirmed the conviction in an unpublished opinion. *Dickey v. State* (Tex.App.—Eastland, No. 11–84–224–CR, March 28, 1985). The Court of Appeals held that appellant's consent to search his apartment was "volunteered" subsequent to his warrantless arrest and that the methamphetamine found in the apartment would have been discovered inevitably by virtue of a search warrant if consent had not been given; that the motion to suppress was "not good" as to this portion of the State's evidence involving 47.32 grams of methamphetamine, and such evidence alone was sufficient to support the jury's verdict that appellant possessed methamphetamine of more than 28 grams but less than 400 grams. The Court of Appeals did not discuss the voluntariness of the consent, nor did it discuss the other evidence of possession of a pistol and marihuana and other methamphetamine that appellant sought to suppress and which was admitted into evidence before the jury over objection. We granted appellant's petition for discretionary review to determine the correctness of the decision of the Court of Appeals.

Craig Mangham, investigator with Narcotic Service, Department of Public Safety, testified he was stationed in Brown County. On the evening of February 7, 1984, after investigative work and alerting other officers, he positioned himself near the apartment complex where appellant lived. Shortly thereafter, when appellant drove into the parking lot and up near his apartment, Mangham did not observe any traffic or other offense being violated. Mangham, dressed in mufti and in an unmarked vehicle, hollered at appellant that he was a police officer, and ordered him out of the 1970 white Lincoln Continental appellant was driving. After some discussion as who Mangham was, appellant got out of the Lincoln and was forced to place his hands on the car. Within three or four minutes Deputy Sheriff Hays Beam arrived. Mangham had Beam handcuff the appellant and pat him down for weapons. Thereafter Mangham found a pistol, a .38 cal. Derringer, on the front seat of the Lincoln, under a rag. Next to it he found a plastic baggie containing substance later shown to be marihuana. Thereafter Mangham then related that he advised the handcuffed appellant that he was under arrest for possession of the gun and marihuana, advised him that he was being stopped for the investigation on methamphetamine. Mangham related that he gave appellant his *Miranda*[1] warnings. Mangham asked appellant if he would consent to a search of his apartment. Appellant refused. Thereafter Mangham continued the search of the Lincoln, "going through the driving compartment, passenger compartment, trunk." He found paperwork in the front seat, the vehicle's title, and in the trunk a zippered bag containing narcotic paraphernalia syringes and ties. Two State Troopers who had arrived at the scene took appellant to jail. On the way *Miranda* warnings were again given to appellant. Deputy Sheriff Beam was left "to keep the scene secure." Mangham left to contact the district attorney about securing a search warrant. At the jail, during a strip search, the officers found two packets of what appeared and was later shown to be methamphetamine. They were in appellant's shirt pocket. Mangham was contacted and came to the jail. He advised appellant an additional charge of methamphetamine possession

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

would be filed. In appellant's presence at jail Mangham telephoned the district attorney about securing a search warrant for appellant's apartment. While Mangham was on the phone, appellant advised him he would consent to the search. Appellant then signed a "Permission to Search" form. At appellant's apartment, where James Lyons also lived, and whose sister and girlfriend often stayed, the officers found, under the carpet beneath the stand on which the hot water heater sat, 47.32 grams of substance later shown to be methamphetamine.

It was undisputed that Mangham did not have an arrest warrant. In his work Mangham had been tracing appellant's movements during the first week of February, 1984. He knew appellant had been convicted of marihuana possession, which conviction had been appealed, and that appellant had a reputation in Brown County of being a supplier of methamphetamine. Mangham made notes of particular locations that appellant frequented. He knew appellant could be frequently found at his mother's house on Avenue B in Brownwood and at an apartment on the Zephyr highway south of Brownwood. Mangham had seen appellant at both locations during the week. He had seen a white 1970 Lincoln Continental automobile at both of these locations. He believed appellant drove such vehicle. On one occasion while watching the Avenue B residence two people left the house. An unidentified person got into the Lincoln, and Lyons, appellant's roommate, entered another vehicle. Both cars drove off in different directions. A high speed surveillance failed to identify the driver of the Lincoln.

The Lincoln bore dealer's tags which were traced to the Central Texas Auto Adjusters in Millsap, near Mineral Wells north of Brown County. Mangham learned Central Texas Auto Adjusters was owned by Al Kubash, a convicted methamphetamine dealer. Mangham knew that Mack Ingram, a resident of Brown County, was a convicted drug dealer. He had seen appellant and Ingram at the Avenue B residence in Brownwood.

On February 3, 1984, James Lyons, appellant's roommate, was arrested on an unrelated offense (aggravated kidnapping) and placed in jail. On that date Mangham visited with Lyons who would not cooperate. On February 5th, it appears Mangham talked with Lyons again, but to no avail.

On February 6, 1984, Mangham observed that appellant was noticeably absent from his frequented locations in Brownwood. Lyons sent for Mangham and about 5 p.m. on February 7, 1976, Lyons, apparently unhappy because appellant had not gotten him out on bond, told the officer appellant had gone "up north" and would "probably" be bringing back a load of methamphetamine. He didn't know where appellant had gone, or by what route he would return, or what time, but "in the near future," "at any time." Lyons related that appellant drove a white 1970 Lincoln Continental. Lyons had been in jail for four days and there was no showing that Mangham learned how Lyons had acquired the related information about appellant's trip.

Mangham testified that after his conversation with Lyons he still "felt like the probable cause was not stout enough to arrest him...." At 7 p.m. Mangham related he talked with Gary Ratiliff, D.P.S. narcotic officer, working undercover. Ratliff, who had made several undercover purchases of methamphetamine from Mack Ingram, told Mangham he (Ingram) was expecting a load of methamphetamine in from the person he was "buying dope off of," apparently on the evening of February 7th. While Mangham and Ratliff had not pinpointed appellant as the "supplier" of Ingram, that was their opinion. When asked if appellant was stopped based on that opinion, he answered "Not just on that opinion," but what Lyons told him and "all this probable cause."

Mangham testified he felt that after his conversation with Ratliff at 7 p.m. he had

sufficient probable cause,[2] but the "time factor, the location, route of travel" made it impossible for him to get an arrest warrant.

Mangham, Ratliff, Beam, the two state troopers and Lyons, the informer, all testified at the hearing on the motion to suppress. At the conclusion of the hearing the trial court overruled the motion.

At trial evidence of the pistol and the baggie of marihuana found in the car, the 12.75 grams of methamephetamine found on appellant's person, and the 47.32 grams of methamphetamine found in appellant's apartment were all introduced before the jury over objection.[3]

In disposing of appellant's contention the trial court erred in overruling the motion to suppress the Court of Appeals wrote:

"Assuming without deciding that Officer Mangham should have secured a search warrant instead of making a warrantless 'temporary detention,' we hold that the 'permission to search' which appellant signed was volunteered by appellant, is not tainted by his warrantless arrest, and that the contraband found pursuant to that permission would have been discovered inevitably by virtue of a search warrant if consent had not been given.

"The search of appellant's residence resulted in the discovery of 47.32 grams of methamphetamine. The trial court did not err in overruling the motion to suppress this portion of the State's evidence, and it is sufficient proof to support the jury's finding of guilty.

"Since appellant's counsel briefed a single ground of error concerning his motion to suppress evidence, and since the motion is not good as to the methamphetamine found pursuant to the voluntary 'permission to search' appellant's residence, we overrule the ground of error urged by appellant's counsel."

The court assumed, without deciding a search warrant should have been secured, but it did not decide or even discuss whether "temporary detention" was valid.[4] It simply concluded (1) the consent

2. Mangham had asked the Mineral Wells police to be on the lookout for the white Lincoln, but he never heard from them.

3. Mangham testified at trial that he also found narcotic paraphernalia in the trunk of the car. Later, upon appellant's request, the court appeared ready to instruct the jury to disregard such testimony, but appellant withdrew his request stating such instruction might serve only to impress the testimony upon the jurors' minds.

4. It is settled law that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such circumstances the State need not demonstrate that probable cause to arrest a suspect existed at the inception of the detention, although such a detention is within the protection of the Fourth Amendment of the United States Constitution, Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and Article I, § 9 of the Texas Constitution. This court has frequently said that circumstances short of probable cause for arrest may justify temporary detention for the purposes of investigation since an investigation is considered to be a lesser intrusion upon the personal security of the individual. Leighton v. State, 544 S.W.2d 394 (Tex.Cr.App.1976); Ablon v. State, 537 S.W.2d 267 (Tex.Cr.App. 1976); Mann v. State, 525 S.W.2d 174 (Tex.Cr.App.1975); Hernandez v. State, 523 S.W.2d 410 (Tex.Cr.App.1975); Borner v. State, 521 S.W.2d 852 (Tex.Cr.App.1975); Wood v. State, 515 S.W.2d 300 (Tex.Cr.App.1974); Baity v. State, 455 S.W.2d 305 (Tex.Cr.App.1970), cert. den., 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158.

Although stopping a vehicle and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment, the governmental interest in investigating an officer's reasonable suspicion, based on specific and articulable facts, may outweigh the Fourth Amendment interest of the occupant in remaining secure from the intrusion. Adams v. Williams, supra, 407 U.S. at 143, 146, 92 S.Ct. at 1921, 1923, 32 L.Ed.2d 612, 617. See also United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604, 610 (1985), citing Delaware v. Prouse, 440 U.S. 648, 653–655, 99 S.Ct. 1391, 1395–1397, 59 L.Ed.2d 660 (1979).

The totality of the circumstances surrounding the incident are looked to in determining whether the police conduct was reasonable. Armstrong v. State, 550 S.W.2d 25, 30 (Tex.Cr. App.1977) (Opinion on Rehearing), and cases

or permission to search was "volunteered" and untainted by the warrantless arrest, the validity of which was never determined, and (2) the contraband found would have been inevitably discovered by a search warrant for the apartment.

■ Before consent to search is deemed effective, the prosecution must prove by clear and convincing evidence that the consent was freely and voluntarily given, *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Paprskar v. State*, 484 S.W.2d 731 (Tex.Cr. App.1972); *Armstrong v. State*, 550 S.W.2d 25, 32 (Tex.Cr.App.1977) (Opinion on rehearing), and neither physically nor psychologically coerced. *Potts v. State*, 500 S.W.2d 523 (Tex.Cr.App.1973); *Armstrong v. State*, supra.

Where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given. *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329, 99 S.Ct. 2319, 2326, 60 L.Ed.2d 920 (1979); *Schneckloth v. Bustamonte*, 412 U.S. 218, 233, 234, 93 S.Ct. 2041, 2050–2051, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548–549, 88 S.Ct. 1788, 1791–1792, 20 L.Ed.2d 797 (1968).

■ The issue of whether consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, supra; *Resendez v. State*, 523 S.W.2d 700 (Tex.Cr. App.1975); *Armstrong v. State*, supra; *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr.App. 1976). See also *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Cr.App.1982); *Fancher v. State*, 659 S.W.2d 836 (Tex.Cr.App.1983).

■ The fact that a person is under arrest does not, in and of itself, prevent a free and voluntary consent from being given. *Armstrong v. State*, supra; *Potts v. State*, supra; *Brown v. State*, 443 S.W.2d 261 (Tex.Cr.App.1969). It must be remembered, however, that a consent to search is invalid if granted only in submission to a claim of lawful authority. *Meeks and McCullough v. State*, 692 S.W.2d 504 (Tex. Cr.App.1985). See *Doescher v. State*, 578 S.W.2d 385, 391 (Tex.Cr.App.1979). The burden of the State to show that consent was freely and voluntarily given is not satisfied by showing a mere submission to a claim of lawful authority. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983), and cases there cited. In *Florida v. Royer*, supra, the Court held that consent to search obtained after an illegal arrest was invalid under the fruit of the poisonous tree doctrine. See also *New York v. Class*, —— U.S. ——, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986); *United States v. Ballard*, 573 F.2d 913, 916 (5th Cir.1978); *Daniels v. State*, 718 S.W.2d 702 (Tex.Cr.App.1986).

cited therein. While a temporary investigative detention is allowed under certain circumstances, these circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the detaining officer. In order to justify the intrusion, the law enforcement officer must have specific, articulable facts, which in the light of his experience and general knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *United States v. Brignoni-Ponce*, 422 U.S. 873, 880–881, 95 S.Ct. 2574, 2579–2580, 45 L.Ed.2d 607 (1975); *Terry*, supra, 392 U.S. at 1, 88 S.Ct. at 1868, 20

L.Ed.2d 889; *Ablon*, supra; *Mann*, supra; *Hernandez*, supra. See also *Shaffer v. State*, 562 S.W.2d 853, 855 (Tex.Cr.App.1978).

Thus, even in the absence of bad faith, detention based "on a mere hunch" is illegal. *Armstrong*, supra, citing *Hull v. State*, 613 S.W.2d 735 (Tex.Cr.App.1981). There must be a reasonable suspicion by the law enforcement officer that some activity out of the ordinary is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. Armstrong, supra. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Armstrong*, supra; *Glass v. State*, 681 S.W.2d 599 (Tex.Cr.App.1984).

The detention here, if unlawful, may also have tainted his apparent voluntary consent. *Truitt v. State,* 505 S.W.2d 594 (Tex. Cr.App.1974); *Evans v. State,* 530 S.W.2d 932 (Tex.Cr.App.1975); *McDougald v. State,* 547 S.W.2d 40 (Tex.Cr.App.1977).

■ The Court of Appeals also relied upon the inevitable discovery doctrine. Where evidence is obtained after a defendant's constitutional rights have been violated, if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered *by lawful means,* then the deterrence rationale has so little basis that the evidence should be received. *Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377, 390 (1984). See also *Miller v. State,* 667 S.W.2d 773 (Tex.Cr.App.1984); *Vanderbilt v. State,* 629 S.W.2d 709 (Tex.Cr.App.1981).

In *Nix v. Williams,* supra, the Court stated:

"But when, as here, the evidence in question would inevitably have been discovered *without reference to the police error or misconduct,* there is no nexus sufficient to provide a taint and the evidence is admissible." (Emphasis added.)

In applying the inevitable discoverable doctrine the Court, without deciding the validity of the "warrantless arrest," merely stated that the contraband would have been found in the apartment by virtue of a search warrant. The Court did not discuss probable cause for issuance of a *valid* search warrant to search the apartment for methamphetamine.

■ The Court of Appeals' analysis was further flawed because it did not consider the impact of the other contested evidence or decide its legality. The issue was not simply the sufficiency of untainted evidence to support the conviction. The motion to suppress contested the admission of the pistol, the baggie of marihuana, narcotic paraphernalia found in the car and the 12.75 grams of methamphetamine found on appellant's person during a strip search at the jail as well as the 47.32 grams found in the apartment. The admission of these items, after the overruling of the motion to suppress and after further objection, cannot simply be ignored. The test for harmless error, even where the error is constitutional, is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction (guilt) or affected the punishment. *Johnson v. State,* 660 S.W.2d 536 (Tex.Cr.App. 1983); *English v. State,* 647 S.W.2d 667 (Tex.Cr.App.1982); *Clemons v. State,* 605 S.W.2d 567, 571 (Tex.Cr.App.1980). See also *Prior v. State,* 647 S.W.2d 956 (Tex. Cr.App.1983); *Jordan v. State,* 576 S.W.2d 825, 829 (Tex.Cr.App.1978); *Ford v. State,* 676 S.W.2d 609 (Tex.App.—Beaumont 1984). And the Court must determine, beyond a reasonable doubt, that the evidence did not contribute to the conviction or affect the punishment. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgment of the Court of Appeals is vacated and the cause is remanded to that court for reconsideration of appellant's sole ground of error consistent with this opinion.