**Houston HARMON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–95–277CR.

Court of Appeals of Texas, Beaumont.

Submitted July 7, 1997.

Decided Aug. 27, 1997.

Ronnie J. Cohee, Law Offices of DeLee & Cohee, Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Wayln G. Thompson, Asst. Crim. Dist. Atty., Beaumont, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Appellant, Houston Harmon, appeals his conviction for Possession of a Controlled Substance, namely cocaine, in an amount less than 28 grams. Appellant's indictment charged that the offense occurred on or about January 22, 1994, in Jefferson County, Texas. Appellant filed a pre-trial Motion to Suppress Evidence on the basis that the evidence seized by the officers was inadmissible under Article I, § 9 of the Texas Constitution and the Fourth Amendment to the United States Constitution. The trial court denied appellant's motion to suppress, such denial being the only alleged error in this appeal.

Factually, on January 22, 1994, Beaumont Police Officer John Nobles and his partner, Sheriff Deputy David Rabalais were on patrol in Beaumont, Jefferson County, Texas. These law enforcement officers were assigned to the Special Tactics and Response Team, a specialized unit dealing with street level crimes such as gangs and drugs. At approximately 10:45 p.m. on January 22, 1994, these officers learned that an officer from another patrol unit had been in a foot chase with a suspect but was unsuccessful in catching him. The officers in this unit further described the fleeing person as wearing a blue jacket. Officers Nobles and Rabalais were given a description of the person. Subsequently, Nobles and Rabalais witnessed three individuals standing in the middle of the roadway at the intersection of Waverly and South 6th Street. At trial, Nobles testified that the three individuals were "standing" in the roadway, while Sheriff Deputy Rabalais testified that the three individuals were "walking down the street together." One of these three individuals was wearing a blue jacket consistent with the description previously given these officers. Appellant, Houston Harmon, became the focus of these officers' attention as he appeared nervous. Appellant identified himself as Houston Earl Harmon. According to the officers' testimony the two other individuals seemed willing to talk, but Harmon appeared nervous. Harmon was stepping back, with his hands in his pockets and kept looking away, appearing to the officers "as if he was going to run or something." Officer Nobles became concerned that appellant had his "hands in the pockets," stating, ". . . safety wise, you don't let people stand in front of you with their hands in their pockets because you can't tell what they're holding." Nobles requested Harmon to remove his hands from his pockets, which appellant did. Harmon, however, repeatedly placed his hands back into his pockets and was repeatedly asked to remove them. Eventually, Harmon placed his hands back into his pockets. Finally, Officer Nobles, having asked appellant three times to remove his hands from his pockets, inquired whether appellant had any weapons in his pocket. Officer Nobles was preparing to do a pat down on the jacket due to the fact that

Harmon had refused to obey commands to remove his hands from his pockets. Harmon informed the officer that he had a knife in his pocket and reached for it. Officer Nobles said, "Look, I'll pull it out of your pocket." Nobles then reached into the pocket and Harmon put his hand on top of Officer Nobles' hand and as Officer Nobles reached into the pocket, Harmon shoved his hand inside the pocket also. When this occurred, Officer Nobles grabbed appellant's arm and "just pulled everything out of the pocket." The contents of appellant's pocket consisted of a brown handled knife with a hook blade and a Cheetos bag with what looked like aluminum foil balled up inside it. Officer Nobles retrieved the knife and placed it in his own pocket. Upon retrieving the Cheetos bag, appellant slapped the bag out of Officer Nobles hand to the ground and appellant left the scene running. Officer Nobles told Rabalais to "get a hold of that bag" and then proceeded to chase appellant. Officer Nobles searched for appellant for approximately fifteen minutes but was unable to find him. The Cheetos bag contained four off-white square type rocks. The knife and the Cheetos bag were turned into the Beaumont Police Department as evidence. During trial, these rocks were scientifically identified as "cocaine base," the scientific name for crack cocaine. Officer Nobles testified that appellant did not fit the description of the person he and Deputy Rabalais were looking for and was in fact, "not the one we were looking for."

Appellant contends that the contraband obtained from appellant under the circumstances presented amounted to illegal police conduct in that: the investigative stop of appellant by the officers was not supported by reasonable suspicion based on articuable facts to justify a temporary investigative detention or stop of appellant; however, if such investigatory stop of appellant was lawful, the officers exceeded their scope of a protective search when Officer Nobles removed the Cheetos bag from appellant's jacket; and, the abandonment of any contraband was not voluntary under the circumstances but the direct result of the officers' misconduct.

■■■ The question before this Court is whether or not the trial court abused its discretion in denying appellant's motion to suppress the evidence seized by Nobles and Rabalais. Appellate courts should not disturb a trial court's ruling on motion to suppress matters unless the record clearly shows an abuse of discretion. *See Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App. 1985). The trial court is the sole trier of fact on a motion to suppress and may believe or disbelieve all or any of a witnesses testimony. *See Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991) and *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). For example, in the present case, appellant's mother Hazel Harmon, testified as an alibi witness, stating that appellant was out of town during the time in question. Ms. Harmon testified that when the police came looking for appellant, she contacted appellant in Louisiana. Sheriff Deputy Rabalais testified that at the time in question, he recognized appellant, had seen him before, and knew what he looked like. This conflicting testimony is left to the determination of the trial court, and we must view the evidence in the light most favorable to the trial court's ruling. *Winters v. State,* 897 S.W.2d 938, 940 (Tex.App.—Beaumont 1995, no pet.).

■■■ In determining whether the officers detention of appellant was justified under the circumstances, the trial court was governed by certain parameters within which the officers' conduct must abide. To justify an investigative detention, an officer must have specific articuable facts which, premised upon his experience and personal knowledge, when coupled with the logical inferences from those facts, would warrant the intrusion on the detainee. *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989). This Ninth Court of Appeals in *State v. Hammitt,* 825 S.W.2d 131, 132–33 (Tex.App.—Beaumont 1992, pet. ref'd), quoting from *Dickey v. State,* 716 S.W.2d 499, 503 n. 4 (Tex.Crim. App.1986), observed:

It is settled law that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time". *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such circumstances the State need not demonstrate that probable cause to arrest a suspect existed at the inception of the detention, although such a detention is within the protection of the Fourth Amendment of the United States Constitution, *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and Article I, sec. 9 of the Texas Constitution. This court has frequently said that circumstances short of probable cause for arrest may justify temporary detention for the purposes of investigation since an investigation is considered to be a lesser intrusion upon the personal security of the individual.

In the present case, Officer Nobles and Sheriff Deputy Rabalais were on notice to look for an individual wearing a blue jacket. When these officers saw the three individuals detained, one of those individuals was wearing a blue jacket. Here, the trial court was required to make a distinction between an arrest and an investigative detention. In *Amores v. State,* 816 S.W.2d 407, 411 (Tex. Crim.App.1991), our Court of Criminal Appeals, relying on *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), refined that distinction. Regarding "investigative detention" the court determined that [investigative detention] "may be founded upon a reasonable, articuable suspicion that the person detained is connected with criminal activity," but not supported by the greater conclusiveness of probable cause to believe that a particular person has committed or is committing a crime. *Id.*

It is clear from the record before us that Officer Nobles and Deputy Rabalais initially approached appellant and his companions as they were standing in the street blocking traffic. The men were committing a criminal offense. *See* TEX. PEN.CODE ANN. § 42.03 (Vernon 1994). As a criminal offense was being committed in their presence, the officers had every right to stop and confront the men. *Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App.1992). The fact that one of the men was wearing a denim jacket was also a factor in the propriety of the confrontation as that item of apparel matched the description of the suspect who fled the other officers.

Contrary to contentions in his brief, there is no evidence of a "detention" of appellant or his companions at this point. Officer Nobles merely stopped the patrol unit in order to talk to the men and ask them to step away from the middle of the intersection. In talking with the men, appellant apparently singled himself out for scrutiny by failing to follow Officer Nobles's request to keep his hands out of his coat pockets. Following the third such request, Officer Nobles *asked* appellant if appellant was in possession of any weapons. Note that Officer Nobles did not initiate any physical contact at this point *vis a vis* a *Terry* pat-down of appellant although it would have been appropriate under the circumstances. When appellant indeed admitted to being in possession of a knife, for the safety of he and Deputy Rabalais, Officer Nobles then reached into appellant's pocket to retrieve said knife. When appellant attempted to simultaneously reach into the same pocket, it was not unreasonable for Officer Nobles to remove all items from said pocket, again for officers' safety. "[O]fficers may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety." *Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App. 1997) *petition for cert. filed,* —— U.S.L.W. —— (U.S. Jul. 29, 1997)(No. 97–5445). We find the initial approach, questioning, intrusion into appellant's coat pocket, and removal of the items in said pocket to be permissible.

Appellant further contends that regardless of the propriety of the initial stop and seizure of items in appellant's pocket, Officer Nobles exceeded the scope of the protective search when the Cheetos bag was opened and its contents examined. Officer

Nobles's testimony contradicts this. He stated that after securing the knife in one of his (Nobles's) pockets, he opened his hand to see exactly what he had when appellant slapped the hand causing everything to fall to the ground. At that point, appellant fled the scene and Officer Nobles began to pursue him on foot. Deputy Rabalais testified he retrieved the bag and placed it in the patrol vehicle. Certainly at that point, Officer Nobles was in possession of knowledge, based upon his personal observations, that warranted him in believing appellant had committed a crime.

Furthermore, when police take possession of property abandoned independent of police misconduct there is no seizure under the Fourth Amendment. *McDuff v. State,* 939 S.W.2d 607, 616 (Tex.Crim.App. 1997) *cert. denied,* — U.S. ——, 118 S.Ct. 25, — L.Ed.2d — (1997). Abandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances, with the issue not being in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *McDuff,* 939 S.W.2d at 616 (citing *U.S. v. Colbert,* 474 F.2d 174 (5th Cir.1973)). In the instant case, as there was no police misconduct involved, and by the act of slapping the Cheetos bag from Officer Nobles's hand and fleeing the scene, abandonment of the contraband was intended by appellant. As such, Deputy Rabalais's taking possession of the bag, and its subsequent search, violated no constitutional or statutory provisions. Appellant's sole point of error is overruled and the judgment of the trial court is affirmed.

AFFIRMED.