NO. 07-02-0379-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



FEBRUARY 4, 2003



______________________________




JAMES P. RILEY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;



NO. 2504; HONORABLE GORDON H. GREEN, JUDGE



_______________________________



Before JOHNSON, C.J., REAVIS, J., and BOYD, S.J. (1)

Memorandum Opinion

 This appeal arises from appellant James P. Riley's conviction, after a guilty plea,
for possession of a controlled substance. His punishment was assessed by the trial court
at two years confinement in the Institutional Division of the Department of Criminal Justice,
probated, and a fine of $500. Appellant now challenges the denial of his pretrial motion
to suppress. Disagreeing that reversal is required, we affirm the judgment of the trial court.

 The charging indictment alleged that on or about May 24, 2002, in Parmer County,
appellant and Lisa Marie Riley possessed between one and four grams of
methamphetamine. Appellant's guilty plea was conditioned on his right to appeal the
pretrial suppression ruling. He now brings that appeal asserting in a single issue that the
search of his automobile was conducted in violation of both the federal and state
constitutions.

 The facts giving rise to appellant's stop and traffic citation are essentially
undisputed. Shortly after 11 p.m. on May 24, 2002, Parmer County Deputy Sheriff Andy
Stormes stopped appellant for a traffic offense. Stormes had appellant sit in the front seat
of the patrol car while he wrote a ticket. Appellant signed a promise to appear, and
Stormes returned appellant's driver's license. The evidence is disputed as to what
happened next. Stormes testified that he asked appellant a single question, whether he
"had a problem" if Stormes searched his car, while appellant averred that Stormes told him
he was going to search his car and that appellant should sign a consent form. It is
undisputed that Stormes did not expressly tell appellant he was free to leave after
returning his driver's license. Appellant signed a written consent form, and Stormes
conducted a search which uncovered the methamphetamine giving rise to the prosecution. 
At the time of the search, two other officers had arrived, but appellant did not know if they
were present at the time he signed the consent form.

 It is axiomatic that at a suppression hearing, the trial judge has broad discretion in
determining the admissibility of evidence and that, in the absence of a clear abuse of
discretion, an appellate court may not reverse. The trial judge is the sole factfinder at a
hearing on a motion to suppress evidence obtained in a search and may choose to believe
or disbelieve any or all of a witness's testimony, as well as the weight to be given the
testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). It is equally well
established that as an appellate court, we may not engage in our own factual review, but
must merely decide whether the trial judge's fact findings are supported by the record. Id. 
If the findings of fact are supported by the record, we are not at liberty to disturb them and
may address only the question of whether the trial court improperly applied the law to the
facts. Id. 

 Under the record in this case, the validity of the search must turn on the consent
given by appellant. In a case of this type, the State must show by clear and convincing
evidence that consent was freely and voluntarily given. Allridge v. State, 850 S.W.2d 471,
493 (Tex.Crim.App. 1991), cert. denied, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68
(1993); Dickey v. State, 716 S.W.2d 499, 504 (Tex.Crim.App. 1986). In challenging the
voluntariness of his consent, appellant emphasizes that his detention continued after
signing the promise to appear because Stormes did not expressly tell him he was free to
leave, and that such detention, unsupported by reasonable suspicion of another offense,
was improper. 

 The trial court obviously resolved the factual dispute in the evidence in favor of the
State. We must, therefore, evaluate appellant's challenge on the basis of any undisputed
facts and the disputed facts as evidenced by Stormes's testimony. 

 Appellant does not cite any authority supporting his contention that his detention
by Stormes continued until he was expressly told he could leave. A similar issue was
addressed in the context of custody for purposes of interrogation in Dowthitt v. State, 931
S.W.2d 244 (Tex.Crim.App. 1996). The court enumerated four general situations which
may amount to "custody." They are: 1) when the suspect is physically deprived of his
freedom of action in any significant way; 2) when a law enforcement officer tells the
suspect that he cannot leave; 3) when law enforcement officers create a situation that
would lead a reasonable person to believe that his freedom of movement has been
significantly restricted; and 4) when there is probable cause to arrest and the officer does
not tell the suspect that he is free to leave. Id. at 255. The only situation arguably
applicable here is the third one enumerated in Dowthitt.

 The relevant situation here was that appellant was in the front seat of the patrol car
after signing a promise to appear. His driver's license had been returned, and nothing else
was left to be done. If other officers were present, appellant testified he was not aware of
them. There is nothing in these facts which would render the trial court's finding an abuse
of discretion. 

 Accordingly, we overrule appellant's issue and affirm the judgment of the trial court.


 John T. Boyd

 Senior Justice


Do not publish.

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 2003). 


ver UIM benefits, and (2) it made prompt payment within two days
of the date of determination of the net amount of the claim. For purposes of clarity, we will 
consider the award of attorney's fees and then consider the award of interest.

Attorney's Fees 
 

 In Brainard, the Supreme Court observed that unlike many first-party insurance 
contracts, the UIM contract is unique because, according to its terms, benefits are
conditioned upon the insured's legal entitlement to receive damages from a third party. 
Brainard, 2006 WL 3751572, at *9. Noting that Trinity's obligation to pay benefits did not
arise until liability and damages were determined, the Supreme Court held the award of
attorney's fees by the trial court was error. Id. Similarly, Mid-Century's payment of
$50,562.55 within two days of the judgment against the third party precludes the award of
attorney's fees under article 21.55, §§ 4 and 6 or § 38.002(3) of the Texas Civil Practice
& Remedies Code. (5) Following Brainard, we hold the trial court erred in rendering judgment
that the Daniels recover $55,450 as attorney's fees.

Interest


 By its judgment, the trial court also awarded interest at 18 percent on the
$50,562.55 from May 3, 2001 to November 15, 2002, in the amount of $13,987.54, plus
pre-judgment interest on $13,987.54. Pre-judgment interest was allowed according to the
decision in Brainard because, in a wrongful death case, pre-judgment interest is authorized
by section 304.104 of the Texas Finance Code; however, the Daniels' motion for summary
judgment was not based on this provision. Id. at *6-7.

 Section 3 of article 21.55 of the Prompt Payment of Claims Act requires the
payment of a claim not later than 15 business days after the insurer receives the
information necessary to secure final proof of loss. Failure to timely pay the claim subjects
the insurance carrier to damages including 18 percent interest and attorney's fees per
section 6. The Daniels' damages recoverable as to Bray were fixed at $95,453.55 at the
non-jury trial on November 13, 2002. Following that determination, Mid-Century promptly
paid the Daniels the amount of $50,562.55 on November 15, 2002. 

 Accordingly, the trial court erred in granting the Daniels' motion for summary
judgment. Mid-Century's first issue is sustained and the Daniels' third issue is overruled. 
Following Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988), we reverse the judgment
of the trial court and render judgment that the Daniels take nothing by their action and that
Mid-Century be discharged with its costs. Mid-Century's request that it recover attorney's
fees in responding to the motion for rehearing is denied.



 Don H. Reavis

 Senior Justice



Campbell, J., concurring.
1. John T. Boyd, Chief Justice (Ret.), and Don H. Reavis, Justice (Ret.) Seventh Court
of Appeals, both sitting by assignment.
2. The Daniels did not file a notice of appeal regarding the denial of their claims under
article 21.21.
3. By letter of April 28, 2005, we notified the Daniels that their cross-points would not
be considered. See Tex. R. App.25.1(c), 26.1(d).
4. See current version at Tex. Ins. Code Ann. §§ 542.051-.061 (Vernon Supp. 2006).
5. Daniels did not designate this statute as a ground to recover attorney's fees in their
motion for summary judgment.