# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00662-CR

**Parrin Hayes, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
## NO. 9024009, HONORABLE JON N. WISSER, JUDGE PRESIDING

## O P I N I O N

Appellant was convicted of possessing more than four grams but less than two hundred grams of cocaine with intent to deliver. *See* Tex. Health & Safety Code Ann. ' 481.112(a), (d) (West 2003).[1] Because he had one prior felony conviction, he received an enhanced sentence of twenty-five

---

[1]    Appellant was indicted under the Texas Controlled Substances Act:

(a)   [A] person commits an offense if the person knowingly . . . possesses with intent to deliver a controlled substance listed in Penalty Group 1.

. . . .

(d)   An offense under Subsection (a) is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants and dilutants, four grams or more but less than 200 grams.

years= confinement.  Tex. Pen. Code Ann. ' 12.42 (West 2003).  Appellant argues on appeal that the district court erred in denying his motion to suppress because his detention was unlawful.  We agree.  We will reverse the judgment of conviction and remand the cause to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts of this case are not in dispute.  On February 4, 2001, Austin police officer Clifford Jaeger observed appellant, whom he knew, walking on Sixth Street.  Officer Jaeger testified that he had encountered appellant before Aa couple of times@ and had detained him a few months earlier on another officer=s belief that appellant was dealing drugs.  In the early morning hours of February 4th, Officer Jaeger observed appellant simply walking across the street, not Adoing anything in particular.@  Appellant did not appear to be intoxicated or under the influence of drugs.  Officer Jaeger then approached appellant and initiated a conversation.

During the pretrial suppression hearing, Officer Jaeger was asked by the State:  AAs you observed [appellant], did you notice anything peculiar that you recognized on his person?@ Officer Jaeger answered:  AOn the initial stop, no.  I basically, you know, went up, communicated with him, and at that time

Tex. Health & Safety Code Ann. ' 481.112(a), (d) (West 2003).

2

I thought, you know, he possibly might have a warrant out. So I basically ID=d him. I already had his name, and I went back to my vehicle and just ran his name to see if he had any warrants out.@[2]

---

[2] Officer Jaeger=s suspicion that an arrest warrant for appellant might exist was based on another officer=s recent account to Jaeger of a separate incident. About a week or more earlier, this other officer had arrested two juvenile girls for cocaine possession and had seen appellant exiting the same vehicle from which the girls emerged. Appellant did not flee and was never pursued, but had left before the officer could approach the two girls.

Meanwhile, Officer Rohre was working as a patrol officer in a marked unit and heard over dispatch that Officer Jaeger was going to stop somebody.[3] Officer Rohre=s job as backup officer was to stand with appellant while Officer Jaeger returned to his vehicle to run a warrant check. For three to four minutes, the three remained posted: Officer Jaeger inside the vehicle with headlights on appellant; appellant standing a few feet in front of the vehicle; and Officer Rohre standing within a few feet of appellant. While acting as Officer Jaeger=s backup, Officer Rohre was concentrating on appellant=s hands, feet and face because, as he testified, a person=s hands are the most dangerous part of the body to an officer, and a person=s feet and face Acan indicate what direction he may be considering running.@ Officer Rohre also monitored 360 degrees around himself and Officer Jaeger to ensure that no one else approached unexpectedly.

Officer Jaeger, still sitting in his vehicle, looked up at appellant and, from this vantage point, saw in the headlights something he had not noticed before: a plastic baggie sticking out from appellant=s waistband. He emerged from the car to get a better look and recognized residue on the bag that appeared to be crack cocaine. Officer Jaeger seized the baggie and placed appellant under arrest.

An Austin Police Department chemist later dried the contents of the baggie and observed a positive reaction for the presence of cocaine in separate samples from each of twenty rocks and crumbs. Including adulterants and dilutants, the aggregate weight of the baggie=s contents was 4.47 grams.

---

[3] The Austin Police Department routinely sends backup during a suspect stop unless the officer expressly states that no backup is needed.

4

At a suppression hearing, appellant argued that the baggie should be suppressed as the fruits of an unlawful seizure because the police did not have a reasonable, articulable suspicion to justify his detention. The trial court denied appellant=s motion to suppress. A jury found appellant guilty of possession of cocaine in an amount of more than four grams but less than two hundred grams with intent to deliver, a first-degree felony. The trial judge then sentenced appellant to twenty-five years= imprisonment.

## DISCUSSION

Appellant appeals, arguing: (1) the trial court erred by denying a motion to suppress the fruits of an illegal seizure; (2) the evidence was legally insufficient to establish the offense charged; and (3) the trial court erred by denying a requested instruction for the lesser-included offense of possession of less than four grams of cocaine.

**Motion to suppress**

When reviewing a trial court=s ruling on a motion to suppress, we review de novo Amixed questions of law and fact@ that do not turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). By contrast, we afford almost total deference to a trial court=s determination of the historical facts that the record supports and those fact findings that are based on an evaluation of credibility and demeanor. *Id*.; *see also Leach v. State*, 35 S.W.3d 232, 234-35 (Tex. App.CAustin 2000, no pet.). Here, the relevant facts and circumstances are not in dispute, and the resolution of this appeal does not turn on an evaluation of the credibility of a particular witness. Therefore, we review de novo the two questions on which this case turns: whether appellant was Aseized@ in such a

5

way that invokes his Fourth Amendment rights and, if so, whether the totality of the circumstances gave the detaining officers a reasonable, particularized, and objective basis for suspecting that appellant was engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 (1968); *see Guzman*, 955 S.W.2d at 89.

**Whether appellant was detained**

The Fourth Amendment protects individuals against unreasonable searches and seizures, including those entailing only a brief detention. *United States v. Mendenhall*, 446 U.S. 544, 551 (1980); *see* U.S. Const. amend. IV. A police officer may approach an individual to ask questions or to request a search without having the level of probable cause or reasonable suspicion that is required for a nonconsensual encounter. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Yet Awhen officers have no basis for suspecting a particular individual, they may generally ask questions of that individual . . . as long as the police do not convey a message that compliance with their requests is required.@ *Florida v. Bostick*, 501 U.S. 429, 439 (1991); *see also Leach*, 35 S.W.3d at 235. Where compliance is not required and the police do not have the quantum of evidence needed to justify an investigatory stop, *see, e.g.*, *Terry*, 392 U.S. at 88, any incriminating evidence the police find during the encounter is nonetheless admissible at trial if it is determined that as of the time of the discovery no seizure had yet occurred. *See Texas v. Brown*, 460 U.S. 730, 735-40 (1983) (plurality op.); *Leach*, 35 S.W.3d at 236; *see also* Wayne R. LaFave, *Search and Seizure*, ' 9.3 at 86 (3d ed. 1996). Thus, this case turns initially on whether the police had detained appellant so as to Aseize@ him for Fourth Amendment purposes.

6

At the suppression hearing, the parties did not contest that appellant had been detained. Rather, they debated whether suspicion of a warrant constituted reasonable suspicion to justify detention of appellant.[4]  Indeed, Officers Jaeger and Rohre consistently described their encounter with appellant as a detention.  During examination by defense counsel at the pretrial suppression hearing, Officer Jaeger testified:

Q:  And as I understand your testimony, youCyou actually stopped and detained Mr. Hayes on the side of the street there, correct?

A:  Correct.

Q:  He was not free to leave?

A:  No, not at that time.

Q:  And that was based on a hunch that there was a warrant available for him?

A:  Correct.  I thought there might have been a warrant issued for him, and I basically ID=d him at that time and went back to my car just to run it and make sure he didn=t have one issued from the prior incident [involving the arrest of two juvenile girls for cocaine possession].

Q:  And, in fact, he did not have a warrant, did he?

A:  No, I don=t believe he did.

---

[4] The district judge characterized the inquiry only as to the reasonableness of the stop, stating, A[this] case is somewhat more interesting for the proposition I guess that the defendant is sufficiently notorious, at some point does the officer have the right to stop him because he=s engaged in so much illegal behavior in the not too distant past.@

Further, during examination by the defense counsel, Officer Rohre testified at the pretrial suppression hearing that appellant was not free to leave:

Q:  And what was your role in the events dealing with Parrin Hayes?

A:  My primary role wasCI was actually just detaining Mr. Hayes while Officer Jaeger conducted a background check on him.

Q:  So you held Mr. Hayes there on the side of the street?

A:  Not physically.  I stood with him.

Q:  But he was not free to leave, was he?

A:  He was not, sir.

We recognize that the officers= nomenclature does not define the contours of the Fourth Amendment analysis.  *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 812 (1996) (explaining that subjective perspective of officers is not determinative of actual nature of encounter).  But in addition to the officers= subjective belief that they had detained appellant, the totality of the circumstances indicates that appellant was not free to leave.

First, Officer Jaeger AID=d@ appellant and Awent back to his car just to run it.@ *See United States v. Lambert*, 46 F.3d 1064, 1068 (10th Cir. 1995) (Awhen law enforcement officials retain an individual=s driver=s license in the course of questioning him, that individual, as a general rule, will not reasonably feel free to terminate the encounter@).  The State urges on appeal that AID=d@ does not necessarily support the inference that Officer Jaeger physically retained appellant=s identification.  Second,

8

even if we assume the State=s characterization of AID=d@ is correct, the posture of the two officers indicates that appellant was not free to leave. While one officer sat in a vehicle running a warrant check, a backup officer stood within a few feet of appellant. Had this been a purely consensual encounter, as the State argues for the first time on appeal,[5] it would have been unnecessary for a backup officer to stand beside appellant while the other officer was preoccupied with running a warrant check. From a review of the totality of the circumstances, we conclude that appellant was Aseized@ sufficiently to invoke Fourth Amendment protections.

**The reasonableness of the detention**

The State asserts, in the alternative, that if appellant was seized, the officers had reasonable suspicion to justify a temporary detention. The Texas Court of Criminal Appeals explains that the reasonableness of a temporary detention:

> must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity.

---

[5] Before consent to search is deemed effective, the prosecution must prove by clear and convincing evidence that the consent was freely and voluntarily given, and neither physically nor psychologically coerced. *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (consent must be freely and voluntarily given); *Dickey v. State*, 716 S.W.2d 499, 504 (Tex. Crim. App. 1986) (en banc) (same); *Potts v. State*, 500 S.W.2d 523, 526 (Tex. Crim. App. 1973) (consent must not be physically or psychologically coerced). This burden is not satisfied by merely showing submission to a claim of lawful authority. *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 329 (1979).

*Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see also Terry*, 392 U.S. at 88 (requiring officer to have specific articulable facts to warrant intrusion of freedom of citizen stopped for further investigation); *Holladay v. State*, 805 S.W.2d 464, 471 (Tex. Crim. App. 1991) (same); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983) (same).

Thus, consistent with the Fourth Amendment, a police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *Gearing v. State*, 685 S.W.2d 326, 327-28 (Tex. Crim. App. 1985), *overruled on other grounds by Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997). Here, the police concede that appellant was doing nothing suspicious. Rather, the purpose for detaining appellant beyond a casual encounter was to investigate whether he had an outstanding warrant; Officer Jaeger suspected, based on the account by another officer of a separate event, that appellant might have been sufficiently connected to that event to have an outstanding warrant. But the Αinarticulate hunch, suspicion, or good faith of the investigating officer is never sufficient to justify a police officer to order a subject to stop [for further investigation].@ *Glass v. State*, 681 S.W.2d 599, 601 (Tex. Crim. App. 1984).

The police may make an investigatory stop to investigate past criminal activity so long as they conform their actions to the same standards governing stops to investigate imminent or ongoing crimes. *United States v. Hensley*, 469 U.S. 221, 228 (1985); *Badgett v. State*, 42 S.W.3d 136, 139 (Tex. Crim. App. 2001). That is, if police have a reasonable suspicion, grounded in specific articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then an investigatory stop may be justified to investigate that suspicion. *Hensley*, 469 U.S. at 229. Where, as here,

10

a police officer relies on information provided by another officer to justify a stop, there are two layers of analysis. First, we look to whether the officer making the stop reasonably relied on the information that a stop was in order. *Id.* If the first prong is met, we look to whether the officer providing the information had a sufficient level of suspicion to ask for the stop or arrest. *See id.* (holding that where police make *Terry* stop in objective reliance on flyer or bulletin, evidence uncovered in course of stop is admissible if police who *issued* flyer or bulletin possessed reasonable suspicion justifying stop).

Regarding the first prong, Officer Jaeger testified that he had never been told that there was an active warrant for appellant or that a warrant had been prepared or presented to a magistrate. All Officer Jaeger relied on was an account of another officer who suggested appellant was associated with two girls recently arrested. This falls far short of the reliance on a Awanted flyer@ upheld in *Hensley*. 469 U.S. at 223. There, an officer stopped Hensley at the behest of another department that issued a flyer stating that Hensley was wanted for investigation of an aggravated robbery. *Id.* The wanted flyer described both Hensley and the date and location of the alleged robbery, and it asked other departments to pick up and hold Hensley for the police in the event that he were located. *Id.* Officer Jaeger=s reliance also falls short of that upheld in *Whitley v. Warden*. 401 U.S. 560 (1971). There, police stopped a suspect in reliance on a radio message issued through a statewide law-enforcement radio network describing the suspect, his car, and the property taken. *Id.* at 564. At least one version of the message indicated that a warrant had been issued. *Id.* at 564 & n.5. By contrast, Officer Jaeger did not stop appellant pursuant to any wanted flyer, bulletin, or even at the request of another officer. We hold that Officer Jaeger=s reliance on an account of

suspicious association, without more, did not constitute an objectively reasonable basis to detain appellant.[6]

 Therefore, we conclude that the trial court erred in overruling the motion to suppress.

**Legal sufficiency of the evidence**

---

[6] Because we conclude that the first prong is not met, we need not reach the second prong.

Having determined that appellant=s conviction must be reversed, we must examine whether remand or rendition of acquittal is the appropriate remedy. To do so, we address appellant=s second point of error, which contends that the evidence is legally insufficient to establish his guilt according to the indictment. We determine sufficiency of the evidence by reviewing *all* of the evidence introduced, including improperly admitted evidence.[7] *Deason v. State*, 786 S.W.2d 711, 716 (Tex. Crim. App. 1990). We review the legal sufficiency of the evidence in the light most favorable to the verdict to determine whether any rational finder of fact could have found all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Moseley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). Sufficiency of the evidence is a question of law, and the appellate court does not determine credibility issues. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The trier of fact is the

---

[7] We must consider all of the evidence admitted by the trial courtCeven improperly admitted evidenceCbecause if *all* of the evidence is legally insufficient, a defendant is entitled to a judgment of acquittal. *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988); *see also Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). By contrast, if all of the evidence is legally sufficient to support the conviction, retrial is permissible under the Double Jeopardy Clause, and the defendant is entitled to a new trial. *Lockhart*, 488 U.S. at 41. Permitting retrial does not offend the Double Jeopardy Clause because it serves the interests of the defendant, affording him an opportunity to Aobtai[n] a fair adjudication of his guilt free from error.@ *Id*. at 42 (quoting *Burks v. United States*, 437 U.S. 1, 15 (1978)).

exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984).

Appellant contends the evidence is legally insufficient to support the finding of an aggregate weight of more than four grams. It is undisputed that the baggie=s contentsCtwenty rocks and some crumbsCweighed 4.47 grams before drying. Appellant contends, however, that the methodology used by the State=s chemist to test for the presence of cocaine did not prove that each of the rocks and crumbs was properly included in the aggregate weight. Although two tests were performed on the baggie=s contents, appellant complains that the more sophisticated of the two tests was not performed on each individual rock, but only on a composite sample taken from each of the rocks. Thus, even though a presumptive test suggested that each of the twenty rocks and crumbs was cocaine, and a more sophisticated test of a composite sample confirmed the presence of cocaine, appellant would have the State test each individual rock with the most exacting standards available. We find this argument to be without merit.

Appellant=s argument hypothesizes that if any of the rocks were composed entirely of a noncocaine substance then that rock could not be included in the aggregate weight of the baggie=s contents. The Texas Court of Criminal Appeals recently rejected this argument as inconsistent with the revised definition of Aadulturant or dilutant.@[8] *Melton v. State*, 120 S.W.3d 339, 343-344 (Tex. Crim. App. 2003) (holding court of appeals erred by treating each rock as separate controlled substance, rather than treating

---

[8] An adulterant or dilutant is Aany material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance.@ Tex. Health & Safety Code Ann. ' 481.002(49) (West 2003).

all rocks found in one bag as mixture). The court in *Melton* squarely rejected the assertion that the State

must prove that each individual rock contains cocaine:

> [I]t would be unnecessary to require the State to test each rock to determine whether it contains cocaine, much in the same way that it would be unnecessary to require the State to prove that each grain of a powdery substance contains cocaine, especially if there were, hypothetically, 350 to 400 rocks instead of thirty-five to forty, all with the same appearance, and all found in the same receptacle. The Legislature did away with the requirement for this sort of hyper-technical analysis when it amended the definition of Aadulterant or dilutant.@

*Id.*

Here, the State=s chemist testified before the jury that she first determined that the aggregate

weight of the baggie=s contents was 4.47 grams. The chemist then placed a sample from each rock in a

chemical solution, which presumptively indicated the presence of cocaine base. Next the chemist tested a

composite sample of each of the rocks through a gas chromatograph mass spectrometer, which indicated

definitively the presence of cocaine. Based on these testsCperformed according to the established

procedure that is used by the International Drug AssociationCthe chemist testified that she could affirm to a

Ascientific certainty@ that every single rock contained cocaine.[9]

---

[9]     During the jury trial, the defense counsel asked the chemist on examination:

15

Q: So in your opinion the composite solution absolutely has to mean that every single one of those [rocks] contains [cocaine], even those crumbs.

A: I can say yes because the preliminary indicators are also there that says that there was crack cocaine in there.

The chemist=s testimony supports the jury=s finding of guilt; she testified that she could conclude to a scientific certainty that each of the rocks contained cocaine and, including adulterants and dilutants, the aggregate weight of the baggie=s contents was 4.47 grams. Viewing the evidence in the light most favorable to the verdict, we find that there was legally sufficient evidence on which the jury, as the trier of fact, could have found the essential elements of the crime beyond a reasonable doubt. Appellant=s legal sufficiency point is overruled.

**Lesser-included offense of less than four grams**

Appellant contends that it was error to refuse an instruction on the lesser-included offense of possession of less than four grams with intent to deliver because the contents of the baggie weighed 2.76 grams when dried. This argument runs afoul of the statute, which includes adulterants and dilutants in the weight of a controlled substance. *See* Tex. Health & Safety Code Ann. ' 481.002(5) (defining Acontrolled substance@ as Aa substance, including a drug, an adulterant, and a dilutant listed in [certain Schedules or Penalty Groups],@ including Athe aggregate weight of any mixture, solution, or other substance containing a controlled substance@). A defendant is entitled to a charge on a lesser-included offense only when two conditions are met: first, the lesser-included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672-673 (Tex. Crim. App. 1993). Here, appellant cannot meet the second condition because the weight of the baggie=s contents after drying is not the relevant weight a jury must consider under the statute.

17

Thus, appellant cannot establish that evidence in the record would permit a jury to find he was guilty only of the lesser-included offense. Appellant=s point is overruled.

### CONCLUSION

We find that the trial court erred in denying appellant=s motion to suppress, but since there was legally sufficient evidence to support the judgment of conviction, we reverse and remand for further proceedings.

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Reversed and Remanded

Filed:   April 1, 2004

Publish